### SACKVILLE et al. v. STOREY.

(Court of Civil Appeals of Texas. San Antonio. May 8, 1912. Rehearing Denied June 26, 1912.)

1. SALES (§ 384*)—CONTRACTS—BREACH BY BUYER—DAMAGES.

A buyer of cattle to be taken by the seller from a ranch to a pasture to enable the buyer to select the cattle desired, who notifies the seller that he will not take the cattle, is not relieved from liability for damages sustained by the seller, except such damages as could have been prevented by the seller reasonably exerting himself to prevent damage, and the seller must exercise ordinary care to prevent injury after such notice, but his failure to do so will not deprive him of such damages as may have been suffered prior to such notice.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1098–1107; Dec. Dig..§ 384.*]

2. PRINCIPAL AND AGENT (§ 147*)—EXISTENCE OF RELATION.

Where a third person had never represented a buyer as agent, and was only agent for a particular trade, the mere fact that the third person was with the buyer the first time he looked at cattle does not raise an inference of agency justifying the seller to treat the third person as agent for the buyer in making a contract of sale, and, where the third person refused to use the buyer's name in making the contract, the seller was put on notice that the third person's authority was special, so that the seller was required to ascertain, not only the fact of the third person's agency, but also the extent of his authority.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 528–533; Dec. Dig. § 147.*]

3. PRINCIPAL AND AGENT (§ 148*)—ACTS OF AGENT.

A person dealing with an agent, and relying solely on his representations, is not entitled to notice of the limitations on the power of the agent, but, where an agent is apparently clothed with full authority, the principal is bound by the act of the agent done within the scope of such apparent authority in dealing with an innocent third person.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 534–552; Dec. Dig. § 148.*]

4. EVIDENCE (§ 471*)—OPINION EVIDENCE—CONCLUSION OF WITNESS.

Where the issue was whether a third person was the agent for defendant or for plaintiff, the testimony of the third person as to what party he acted for was objectionable, as calling for a conclusion on a mixed question of law and fact.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2149–2185; Dec. Dig. § 471.*]

5. WITNESSES (§ 374*)—IMPEACHMENT—ADMISSIBILITY.

Where, in an action on a contract for the sale of cattle, the issue was whether a third person was the agent for plaintiff, the seller, or for defendant, the buyer, and the third person as a witness for plaintiff testified that he was authorized by defendant to make the contract,

but was not authorized by plaintiff to do so, and defendant testified that the third person was not authorized to make the contract, declarations by the third person that he had plaintiff's cattle for sale and would recover a commission for selling them, and that he had sold the cattle to defendant and would divide the commission with another, were admissible to affect the credibility of the third person as a witness, but not to establish agency.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 1201, 1202; Dec. Dig. § 374.*]

Appeal from District Court, Frio County; J. F. Mullally, Judge.

Action by H. A. Sackville and another against H. C. Storey. From a judgment for defendant, plaintiffs appeal. Reversed and remanded.

R. W. Hudson, of Pearsall, and Jas. D. Crenshaw, of San Antonio, for appellants. A. B. Storey, of San Antonio, O. T. Brown, of San Marcos, and W. H. Lipscomb, of San Antonio, for appellee.

MOURSUND, J. Appellants were plaintiffs below, and sued appellee, alleging: That defendant by his duly authorized agent, S. H. Ellis, entered into a written agreement with plaintiffs to be performed in Frio county, Tex., in which defendant agreed to purchase from plaintiffs 250 head of steer cattle at $37.50 per head at their ranch near Dilley, Tex., the same to be the top cut of all steers then on plaintiffs' said ranch. That, when said contract was made, defendant, through his said agent, Ellis, paid plaintiffs $50 in part payment for said cattle, and on or about November 16, 1910, before said cattle were rounded up and ready to be passed on, defendant paid $250 more on said contract. That soon thereafter, on November 12, 1910, plaintiffs began to gather their steer cattle, and place them in a small pasture, so that defendant could select the 250 head, and that all of their steer cattle, amounting to about 400 head, were gathered and ready for defendant to make his selection on the day specified in the contract. That the cattle were held in the small pasture about five days, waiting for defendant to cut or select said steers according to contract. That the water and feed in such pasture was necessarily limited, which was known to defendant. That by reason of the necessary running of said cattle in rounding them up, and by reason of their being held in a small pasture, they lost in weight about 100 pounds per head, to plaintiffs' damage $1,760. That plaintiffs were also damaged in the sum of $50 by reason of hire of hands and use of horses in gathering said cattle. That at the time the cattle should have been received and accepted by defendant the market value thereof had declined $2.50 per head from the price defendant agreed to pay for same, to plaintiffs' damage $625. For all of which damages plaintiffs sued.

Defendant filed general demurrer, general denial, and special answer, alleging: That he had submitted an offer through said Ellis as agent of plaintiffs to purchase 250 head of steer cattle from plaintiffs to be selected from their herd of 380 to 400 head of fours and up, and to be delivered 20 miles on the road towards defendant's ranch. That by "fours and up" was meant that all steers should be not less than four years of age, and it was so understood by all parties. That shortly thereafter Ellis told him his offer was accepted, that the trade had been closed, that he had paid $50 on the trade, and it was necessary for defendant to advance $250 more. That he understood every material part of his offer had been accepted, and on November 18, 1910 he started to the Sackville ranch for the purpose of carrying out his part of the contract, but while at Dilley, on his way to said ranch, he was shown the written contract pleaded by plaintiffs, and that same was not his contract; that he never made it or authorized Ellis to make it for him; that he never consented to its stipulations; that he was not at any time a partner of Ellis, nor a joint contractor with him; and that Ellis was never his agent for any purpose; that said contract, if made, was a fraud on him, because it imposed on him conditions and stipulations to which he had never agreed or consented, and because, as soon as apprised of its contents, he repudiated the same, and notified plaintiffs in person that he would not recognize it as binding nor perform it. He also alleged that, if plaintiffs suffered damage, they contributed by their own negligence to the injuries complained of; that at the time he notified appellants he would not recognize or perform said contract they negligently proceeded to gather and hold said cattle; that, if said cattle were of the market value of $37.50 per head at the time when he refused to perform said contract, plaintiffs, by the exercise of reasonable diligence, could have sold the same to some other person or persons at that price, but that plaintiffs negligently and willfully withheld said cattle from the market, well knowing that the market value thereof was likely to decline; that any money paid by Ellis as a forfeit was without defendant's knowledge or consent and unauthorized by him.

Upon trial before a jury, a verdict was returned for defendant, and judgment entered accordingly, from which plaintiffs appealed.

[1] Appellants' first assignment of error complains of the giving of special charge No. 7, as follows: "In his answer, the defendant, in reply to plaintiffs' petition, alleges that plaintiffs were themselves negligent in handling and holding the cattle for delivery, and in this connection and upon this issue you are further charged as follows: If you believe from the evidence that the plaintiffs were themselves negligent in gathering and

holding said cattle, and that such negligence on the part of plaintiffs contributed to cause such injuries, if any, to the cattle, you will not find in favor of plaintiffs on account of any injuries to the cattle by gathering and holding them for delivery. Given, with this definition by the court: 'Negligence' as used in this charge means the failure to exercise ordinary care; and 'ordinary care' is the degree of care that a person of ordinary prudence would exercise under, like circumstances." The contention is made that the issue thereby submitted was not raised by the evidence. Defendant pleaded that plaintiffs were negligent in continuing to gather and hold the cattle after he notified them that he would not recognize nor perform the contract; also, that plaintiffs could have sold the cattle to other persons at same price the contract specified, but negligently and willfully failed to do so. There is no evidence that the cattle could have been sold to other parties, nor that there was any rough or unusual handling of the cattle in gathering or holding them. They were placed in a trap containing between 300 and 400 acres, which was bare of grass and had little water. H. A. Sackville, one of the plaintiffs, testified they began active gathering on Thursday morning and gathered until defendant came out which was about 10 or 11 o'clock on Friday, the 18th. At another place in the statement of facts his testimony shows they began gathering on the 15th, and, when defendant came, they had been in the trap three days, and they kept them in there until the 23d. The testimony is to some extent contradictory in regard to what happened at the time defendant came on the 18th, but the issue arose whether at that time defendant notified plaintiffs that he would not take the cattle. Plaintiffs contend they received no notice until the 23d.

We think the charge as given was erroneous. If, as pleaded by defendant, the plaintiffs were negligent in continuing to gather and hold the cattle after notice the defendant would not thereby be relieved from all damages incurred as provided in the charge, but only such damage as could have been prevented had plaintiffs exerted themselves reasonably to prevent damage. 1 Sutherland on Damages, §§ 88, 155. It is plaintiffs' duty to exercise ordinary care and diligence to prevent injury after notice by defendant that he will not perform the contract. He must guard against damage after notice, but his failure to do so will not deprive him of such damages as may have been suffered prior to such notice. The jury may have taken the view that plaintiffs were negligent in not turning the cattle out of the trap after the dispute on the 18th, and that, therefore, under the charge defendant was liable for no damages, whether occurring prior to or after such dispute.

The question raised by the third, fourth, fifth, and sixth assignments of error is

149 S.W.—16

whether the court erred in special charges and the general charge in failing to stipulate that plaintiffs should have had knowledge or notice that Ellis was violating his instructions from the defendant, and that he did not embody all of the terms of his instruction in said contract. The proposition under all of these assignments is as follows: "When an agent acts within the scope of his apparent authority, his principal is bound thereby, although the agent may have violated his instructions, unless the party with whom the agent was dealing knew of such instructions or that they were being violated."

[2] In this case the undisputed evidence shows that Ellis had never before represented defendant as agent, and that he was only agent for a particular trade. There is no evidence that defendant ever told plaintiffs that Ellis was his agent, and Ellis had no written authority to act as agent for him. The mere fact that Ellis was with defendant the first time he looked at the cattle does not even raise an inference of agency. The only evidence plaintiffs had at the time of making the contract to show that Ellis was the agent of defendant was Ellis' statement to that effect. His conduct in refusing to use Storey's name in making the contract and in insisting on putting in a clause concerning his commission was calculated to put plaintiffs on notice that his authority was special. Apparent authority must emanate from the principal, his acts, or words must have misled plaintiffs to their injury, before he is chargeable with acts not authorized by him. The duty devolved upon plaintiffs of ascertaining not only the fact of Ellis' agency, but also the nature and extent of the authority which was conferred. Mechem on Agency, §§ 706, 707. Buzard v. Jolly (Sup.) 6 S. W. 422.

[3] Where a person deals with an agent relying solely upon the representations of the agent, we see no reason why he should be entitled to notice of the limitations upon the agent's power. The cases cited by appellants are not in point. The case of Merriman v. Fulton, 29 Tex. 97, was one in which by written instruction the agent was clothed, apparently, with full authority to act in the matter. Under these circumstances, the principal was held bound by the act of his agent, done within the scope of his apparent authority, in dealing with innocent third persons. The case of G., C. & S. R. Ry. Co. v. Hume Bros., 87 Tex. 219, 27 S. W. 110, was one where a local agent or station master of a railroad contracted to furnish cars, and it was held that such act was within the scope of his apparent authority. This has been held in many cases, but the holding is based on the fact that such agent being in charge of the business and empowered to contract for the shipment of freight is held out to the public as having authority to contract with reference to all the ordinary details of

the business, and within the range of such business is a general agent. We consider appellants' contention inapplicable to the facts of this case, and overrule these assignments.

[4] The ninth assignment complains of the ruling of the court in refusing to permit the witness Ellis to testify for whom he was acting in making the contract on November 12th. The question was excluded because calling for the conclusion of the witness. Under the pleadings in this case, it was a disputed matter whether Ellis was the agent of defendant or the agent of plaintiffs, and it was a matter for the jury to determine. We think the question was properly excluded because calling for a conclusion upon a mixed question of law and fact.

[5] The tenth, thirteenth, fourteenth, and sixteenth assignments of error complain of the action of the court in permitting the witness Ellis to be asked whether in conversation with Blewett and Campbell, occurring prior to the contract sued on, he stated that he had the Sackville cattle for sale, and would receive a commission of 50 cents per head for selling same, and that, after the making of the contract sued on, he stated that he had sold the cattle to defendant, and would divide commission with Blewett. The objection was made that agency could not be proved by the declarations of the agent, and that there being no prima facie proof that Ellis was plaintiffs' agent, his declarations were not admissible against plaintiffs. Ellis testified he told defendant that plaintiffs had told him if he expected any commission he would have to look to the other man, also that he told defendant he could buy the cattle at $37.50 per head. The contract called for defendant to pay $37.50 per head, but at the same time provided that Ellis was to receive 50 cents per head commission out of said $37.50, which evidently reduced the amount to be received by plaintiffs to $37 per head, so that they were to lose the amount of the commission. Plaintiffs and defendant each claimed that Ellis was the agent of the other. Plaintiffs used him as their witness, and on direct examination elicited from him the testimony that he was never authorized by plaintiffs to sell any of their cattle, and that he was authorized by defendant to make the particular contract sued upon by plaintiffs. Defendant testified that Ellis was not authorized to make the contract sued upon, and the issue thus formed was the main issue in the case. We think the evidence was admissible, but the jury should be instructed that the declarations of Ellis could not be considered as evidence that he was the plaintiffs' agent, but could be considered upon the matter of Ellis' credibility, and, if they found it was established by other evidence that he was plaintiffs' agent, then such declarations might be considered upon the question of what was done within the scope of his

agency. Sullivan v. Fant, 51 Tex. Civ. App. 6, 110 S. W. 517.

The twelfth assignment complains of the admission in evidence of a conversation between defendant and Ellis, the same being objected to because outside of the presence and hearing of plaintiffs, and because Ellis was not shown prima facie to have been the agent of plaintiffs. This evidence should not have been admitted. It was not calculated to aid the jury in passing upon the credibility of the witness Ellis, and was a conversation occurring outside the presence and hearing of plaintiffs.

The fifteenth assignment of error complains of certain questions and answers regarding a letter written by Blewett to defendant. The letter was immaterial, Blewett not being an agent of plaintiffs, but the bill of exception does not show that the letter was read in evidence. The questions and answers set out in the bill are harmless.

The seventeenth assignment complains of the admission of a conversation between defendant and witness Ellis, which occurred about November 9th. This conversation was not in the presence of plaintiffs and occurred prior to the time the contract was made and prior to defendant's offers to purchase, and was inadmissible for the reasons stated in discussing the twelfth assignment. The evidence, however, was harmless.

We sustain the eighteenth assignment. The witness should not be permitted to testify to inferences or suppositions.

For the errors pointed out, the judgment is reversed and the cause remanded.