CONNOR v. UVALDE NAT. BANK et al.

(Court of Civil Appeals of Texas. San Antonio. May 7, 1913. On Motion for Rehearing, May 21, 1913.)

1. BILLS AND NOTES (§ 475*) — PLEA — NON EST FACTUM.

A plea of non est factum in an action on a note denies the execution of the note by himself or by any person authorized to sign or execute the same for him.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 1514–1518, 1556; Dec. Dig. § 475.*]

2. PRINCIPAL AND AGENT (§ 119*)—SIGNATURE OF NOTE — AUTHORITY — BURDEN OF PROOF.

In an action on a note alleged to have been signed by one under authority from defendant, in which defendant pleads non est factum, the burden is on plaintiff to show the authority of the person to sign the particular note sued on, as well as the fact of signing.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 391–401; Dec. Dig. § 119.*]

3. PRINCIPAL AND AGENT (§ 119*)—AUTHORITY—DUTY TO ASCERTAIN.

Persons dealing with an assumed agent, whether general or special, are bound at their peril to ascertain not only the fact of the agency but the extent of his authority, and in case either is controverted the burden of proof is upon them to establish it.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 391–401; Dec. Dig. § 119.*]

4. PRINCIPAL AND AGENT (§ 109*)—AUTHORITY TO SIGN NOTE—CONSTRUCTION.

Authority to sign a person's name to a note as surety does not confer authority to sign his name to a joint and several note as principal, nor does authority to execute a note for a certain amount confer authority to execute one for a larger amount.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 318–322, 360, 361, 365; Dec. Dig. § 109.*]

5. PRINCIPAL AND AGENT (§ 123*)—AUTHORITY TO SIGN NOTE—SUFFICIENCY OF EVIDENCE.

In an action on a note alleged to have been signed by an agent under authority from defendant, the evidence *held* insufficient to show that the agent had authority to sign his principal's name as principal in the note.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 420–429; Dec. Dig. § 123.*]

6. PRINCIPAL AND AGENT (§ 109*)—AUTHORITY TO ANTEDATE NOTE.

Authority to an agent to sign a note in renewal of a note, to which the principal was a party, carries with it, in absence of evidence of a contrary intent, authority to antedate the renewal note so that it would bear date when the other became due.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 318–322, 360, 361, 365; Dec. Dig. § 109.*]

On Rehearing.

7. PRINCIPAL AND AGENT (§ 137*)—AUTHORITY—ESTOPPEL.

A person bound to ascertain what authority an agent possesses, after accepting an unauthorized contract, cannot be heard to say that the agent was authorized to make another contract, and that he is only asserting such rights as he could have asserted had the other contract been made, and therefore no harm has been done by the agent exceeding his authority.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 492–494; Dec. Dig. § 137.*]

8. PRINCIPAL AND AGENT (§ 109*)—AUTHORITY—SIGNING NOTE—DEFENSE.

Where an agent exceeds the authority given him to sign his principal's name to a note as surety by signing it as principal, it is no defense that no harm resulted to the principal from such excess of authority.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 318–322, 360, 361, 365; Dec. Dig. § 109.*]

9. EVIDENCE (§ 265*)—ADMISSIONS—CONCLUSIVENESS—WEIGHT.

In an action on a note, in which it was shown that an agent signed his principal's name as principal in the note, while authorized only to sign as surety, that the principal testified on direct examination that he authorized the agent only to sign as surety, while on cross-examination he contradicted himself and said that there was no limitation on the authority, was not a conclusive admission which would overcome the testimony of the agent that he was authorized to sign only as surety, and the weight of the testimony is for the jury.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1029–1050; Dec. Dig. § 265.*]

Appeal from Uvalde County Court; J. F. Robinson, Judge.

Action by the Uvalde National Bank against M. Connor and others. From a judgment entered on a verdict directed for plaintiff, defendants appeal. Reversed and remanded.

Jno. W. Hill, of Uvalde, and T. H. Ridgeway, of San Antonio, for appellants. W. D. Love, L. Old, and L. E. Lanier, all of Uvalde, for appellee.

MOURSUND, J. The Uvalde National Bank sued F. E. Seawell, M. Connor, and J. J. H. Patterson upon a promissory note for $815, alleging that the note was a joint and several obligation, and that Connor's name was signed thereto by Seawell, who was duly authorized to sign said Connor's name thereto. Connor filed a plea of non est factum, a general demurrer, and general denial. Patterson admitted the execution of the note and prayed for judgment over against Seawell for any amount he might have to pay, and also for contribution over against Connor. Connor also filed a plea for judgment against Patterson for half of any amount that Connor might have to pay in the event it was decided that he was a surety upon the note. Upon the trial, the court instructed a verdict in favor of plaintiff against all the defendants for the full amount of the note, with interest and attorney's fees, and for defendants Connor and Patterson over against Seawell, and for each of said two defendants against the other for judgments of contribution. Upon the return of the verdict according to the in-

struction given by the court, judgment was entered accordingly, from which Connor appealed.

## Summary of Evidence.

Defendant Seawell testified as follows: "My name is F. E. Seawell. I am one of the defendants in this case. I reside in San Antonio, Tex. I resided in Uvalde before moving to San Antonio. I am acquainted with the defendant M. Connor. Have known him several years. I have seen the note sued upon in this case before [the note then being exhibited to him]. I signed my name and the name of M. Connor to this note. I had authority from Mr. Connor to sign his name to it. He gave me authority to sign his name to it." On cross-examination he testified: "Mr. Connor was on another note of mine at the Uvalde National Bank and this note became due and I went out to Mr. Connor's farm and asked him if he would renew the note with me and he said he would. This was some time during the latter part of April or during the month of May, 1911. Mr. Connor was at that time down in his hayfield making hay. The amount of the note was never mentioned nor discussed, as it was a renewal note. Nothing was ever said about the principal, interest, nor attorney's fees of the note; that was never discussed nor mentioned. I came on back to town and went to the bank and had the note made out, and then signed my name to it and signed Mr. Connor's name to it. Mr. Connor never saw the note before it was executed. I did not take it with me out to Mr. Connor's farm when I went. The note was not made out until after I came back to town. I was the principal in the old note and am also the principal in the new note. I owe the debt. Mr. Connor did not get anything on the note. I got the money from the bank. Mr. Connor was only surety on the old note, and I just asked him if he would be surety on the new note, and he said he would. I was only to sign his name to the note as surety. I was to be principal in the new note and he was to be a surety. I only had authority from Mr. Connor to sign his name as surety to the note. I did not have authority from him to sign his name as principal to the new note. I am positive of this. There was no one present at the time I talked to Mr. Connor down in the hayfield, except Mr. Connor and myself. No one heard the conversation, except Mr. Connor and I. I am sure it was some time in April or May, 1911, when I went out to Mr. Connor's farm. He was working in the hayfield. I am sure about that. The note was dated back to March 15, 1911, so it would take effect on the date the old note became due. The interest of the old note was not paid; it was added into the face of the new note. I did not pay the interest on either the old or the new note." The promissory note sued upon was,

for $815, dated March 15, 1911, due 90 days after date, bearing 10 per cent. interest from maturity, and providing for 10 per cent. attorney's fees if placed in the hands of attorneys for collection after maturity. It was payable to plaintiff's order, was a joint and several note, with the names F. E. Seawell, J. J. H. Patterson, and M. Connor, per Seawell, signed thereto. The note was placed in the hands of attorneys for collection after maturity upon an agreement to pay them the 10 per cent. attorney's fees provided for in the note as their fee for collecting the note.

Defendant Connor testified on direct examination as follows: "My name is M. Connor. I am one of the defendants in this cause. I live about 11 miles east of Uvalde. I am a farmer and stock raiser. I know F. E. Seawell. I have known him several years. I was surety on a note for Mr. Seawell at the bank, and he came out to my place some time in the summer of 1911 and asked me if I was willing to go on the note again. I asked him if he had kept the interest paid up and he said he had. I told him that I would go on the note again. I was making hay at the time. He did not have the note with him." The note sued upon was then handed to the witness and he said: "I never saw this note until after it was sued upon. I did not authorize Mr. Seawell to sign my name to this note. I authorized him to sign my name to a note, but not this note. I authorized him to sign my name to a $200 note." On cross-examination he said: "Yes, it is a fact that I gave Mr. Seawell authority to sign my name to a note, and when he came down there in the field there was nothing said about the amount, terms, interest, or condition; just authorized him to sign my name to a note, and that was all there was to it."

## Conclusions of Law.

[1-3] By plea of non est factum Connor denied that he executed the note described in the petition, and also denied that it was executed by any person authorized by him to sign or execute the same for him. Thereupon the burden rested upon plaintiff of showing the authority of Seawell to sign Connor's name to the particular note sued upon, as well as the fact that he did actually sign such name thereto. Brashear v. Martin, 25 Tex. 202; Neil v. Schackelford, 45 Tex. 131; City of Tyler v. Adams, 62 S. W. 119; Clymer v. Terry, 50 Tex. Civ. App. 300, 109 S. W. 1130. As was said by Judge Neill in the case of Baker v. Machinery Co., 84 S. W. 662: "Persons dealing with an assumed agent, whether the assumed agent be a general or a special one, are bound, at their peril, to ascertain not only the fact of the agency, but the extent of his authority; and, in case either is controverted, the burden of proof is upon them to establish it." See, also, Mechem on Agency, §§ 706, 707;

Buzard v. Jolly (Sup.) 6 S. W. 422; Sackville v. Storey, 149 S. W. 241; Machinery Co. v. Peter & Sherrill, 84 Tex. 627, 19 S. W. 860. In this case it was the duty of plaintiff to ascertain, at its peril, whether Seawell had authority to sign Connor's name to the note it accepted, and, when it sued upon such note and the authority of Seawell to execute the note for Connor was denied under oath, the burden rested upon plaintiff of showing such authority, and it could not meet such burden by proof of authority to execute a note different from the one sued upon.

[4, 5] Authority to sign a person's name to a note as surety does not confer authority to sign his name to a joint and several note as principal, nor does authority to execute a note for a certain amount confer authority to execute one for a larger amount. Cyc. vol. 31, pp. 1342, 1385, 1386. ' Applying these principles to the evidence introduced in this case, we find such evidence insufficient to justify the court in instructing a verdict for plaintiff. Seawell testified positively that his only authority was to sign Connor's name as a surety and not as a principal obligor. Connor, upon cross-examination, went a long way toward justifying the instruction of the court against him, but it cannot be said that he even contradicted Seawell's statement as to the capacity in which his name should appear upon the note.

· [6] It is also contended that plaintiff failed to make a case because the note was antedated. It appears that, while both parties refer to the fact that the note to be given by Seawell was to be a renewal note, the note to be renewed was not introduced in evidence, nor any portion of the description of same testified to other than the date when it became due. The note sued upon was dated as of the date of the maturity of the other note. Connor was a party to the other note and chargeable with knowledge of the time when it matured. Under these circumstances, in the absence of evidence showing a contrary intent, we think authority to sign a note in renewal of the former note would carry with it authority to antedate the note so it would bear the date when the other note became due. In some cases antedating an instrument plainly constitutes a violation of the obvious intent of the principal and exceeds the authority conferred, but the facts of this case, as shown by the evidence introduced, do not make out such a case. Appellees cite the following cases in support of the action of the trial court, viz.: Jones v. Primm, 6 Tex. 170; Whittle v. Bank, 7 Tex. Civ. App. 616, 26 S. W. 1011; Riley v. Reifert, 32 S. W. 185; Garner v. McGowen, 27 Tex. 490; Harfst v. Bank, 56 Tex. Civ. App. 31, 119 S. W. 694; Garlitz v. Bank, 152 S. W. 1151. In each of these cases the maker's name was signed by him or by his authority, and the questions arose upon unauthorized filling in of blanks or fraud used in procuring him to sign the instrument. There was some act in each case on the part of the maker upon which persons dealing with reference to the instrument could rely for their protection in taking the instrument for what it purported to be.

It becomes our duty to reverse this case because the court was not authorized to instruct a verdict for plaintiff upon the evidence introduced. As it is apparent that the case has not been fully developed, it will be remanded for another trial.

Reversed and remanded.

## On Motion for Rehearing.

Appellee bank questions the correctness of our conclusion that authority to sign a person's name as surety does not confer authority to sign a joint and several note as principal, and that authority to execute a note for a certain amount confers no authority to execute one for a larger amount. As additional authorities on this proposition, we cite Mechem on Agency, § 393, and Randolph on Commercial Paper, §§ 359, 360.

[7] It is also contended that, even though Connor conferred authority only to execute the note as surety, such authority is not abused by signing his name as a joint and several obligor, because, if it be known to the payee that he is in fact a surety, then he would have the same rights with respect to the payee as if the word "surety" was written after his name. When Seawell testified positively that he "only had authority from M. Connor to sign his name as surety to the note," we can only construe such language as meaning that the note on its face should disclose the fact that Connor was surety. If any other meaning was intended, it cannot be supplied by us. We think an examination of the authorities, showing the strict construction placed upon authority such as was sought to be exercised in this case, makes it clear that a person authorizing a contract showing on its face that he is a surety has not authorized one under which he would be bound to notify the payee of his real relation as surety or prove that the payee had knowledge thereof, and which would bind him as a principal obligor as to an innocent purchaser for value. Nor can the person chargeable with the duty of ascertaining what authority the agent possesses, after accepting an unauthorized contract, be heard to say that the agent was authorized to make another contract and that he is only asserting such rights as he could have asserted had the other contract been made, and therefore no harm has been done by the agent exceeding his authority. If the agent exceeds his authority, his contract is not binding unless ratified; and, there being no binding contract, no recovery can be had.

[8] The proposition that no actual harm was suffered by Connor has no weight. It could as well be said that, when an agent

signs a $1,000 note when only authorized to sign a $500 note, the principal could be held responsible if sued only for $500, because he would then have suffered no injury by reason of the excess of authority on the part of his agent. Courts cannot, if a contract unauthorized by the principal is made by the agent, substitute for the same the contract which he was authorized to make.

[9] Appellee Patterson contends that the testimony of Connor on cross-examination constitutes an admission that nothing was said about the capacity in which the note should bind him, and that such admission is to be taken as conclusive evidence overcoming the positive testimony of Seawell. In support of this theory counsel cite Payne v. Railway Co. (Mo.) 30 S. W. 149, and Feary v. St. Ry. Co., 162 Mo. 75, 62 S. W. 460. The question arising in these cases was one involving the right of the court to instruct as to the conclusiveness of the testimony of parties against their interest. Later Missouri cases do not bear out the broad doctrine announced in the two cases cited. See Montgomery v. Railway Co., 181 Mo. 477, 79 S. W. 934; Conner v. Railway Co., 181 Mo. 397, 81 S. W. 151; Sheperd v. Transit Co., 189 Mo. 362, 87 S. W. 1010; Jennings v. Swift & Co., 130 Mo. App. 391, 110 S. W. 21. In the case of Conner v. Railway the court said: "If it is a mere construction of phrases or expressions used by the witness in detailing his testimony as to whether the statements are favorable or unfavorable to his side of the case, then there is no necessity, nor is it error, to refuse an instruction embodying the principle in the one before us. It is simply the province of the jury, guided by the general instruction as to the credibility of witnesses and the weight to be attached to their testimony, to determine the credit of such witness and the force and effect of his testimony. If a plaintiff or defendant testifying in a cause make statements which may be construed unfavorably to them, it is the province of the jury to consider them; but, unless such statement amounts to an admission of a fact material to the issue, it is not the province of the court to assume that unfavorable statements have been made and instruct the jury on that subject." It is not necessary in this case to hold whether an express admission of a party to the suit is conclusive against him in spite of contradictions thereof by other witnesses. In this case Connor gave positive testimony on direct examination, and when cross-examined gave testimony inconsistent with that first given and did not explain or correct his testimony first given. The statement on cross-examination appears to have been in answer to a leading question, and it is not an express admission either that his former testimony was false or that nothing was said about the

capacity in which he was to be bound by Seawell's act. Under such circumstances, it is the province of the jury to determine what was meant by the party and to weigh his testimony.

It is probable that, if each of the persons testifying had been required to repeat as nearly as he could the conversation occurring between them instead of stating his conclusions, some of the questions arising upon this appeal would not have arisen.

We adhere to our former opinion that the court was not justified in instructing a verdict, and overrule the motions for rehearing.