CONNOR v. UVALDE NAT. BANK et al. (No. 5360.)

(Court of Civil Appeals of Texas. San Antonio. Dec. 16, 1914. Rehearing Denied Jan. 13, 1915.)

1. BILLS AND NOTES (§ 502*)—PARTIES—MAKERS—EVIDENCE—ADMISSIBILITY.

Whether a maker signing the name of a comaker knew at the time that the parties were equally bound was immaterial in determining the liability of the comaker to the payee.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 1708–1716; Dec. Dig. § 502.*]

2. WITNESSES (§ 377*)—IMPEACHMENT—EXAMINATION.

The credibility of the maker of a note signing thereto the name of a third person, on the issue whether the third person was liable as maker or surety, is unaffected by his knowledge of the law affecting the liability of the third person.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. § 1207; Dec. Dig. § 377.*]

3. BILLS AND NOTES (§ 502*)—PARTIES—LIABILITY.

Where the issue was whether a maker whose name was signed by a comaker was liable as maker or as surety, a question asked the comaker as to the difference between the liability of a principal and surety was immaterial.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 1708–1716; Dec. Dig. § 502.*]

4. EVIDENCE (§ 471*)—CONCLUSION OF WITNESS.

Where, in an action on a note executed by a maker who also signed the name of the comaker, the issue was whether the maker had authority to execute the note with the comaker

as surety, or as maker, a question asked the maker as to whether it was not a fact that he had only authority to execute a note making the comaker a surety thereon, was properly excluded, as calling for a conclusion of the witness not binding on the payee, but the facts giving authority to the maker must be shown.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2149–2185; Dec. Dig. § 471.*]

5. BILLS AND NOTES (§ 517*)—ACTIONS—PARTIES LIABLE—EVIDENCE.

In an action on a note alleged to be the joint and several obligation of the makers thereof, evidence *held* to sustain a finding that a maker gave the comaker authority to execute the note for the former, and not merely bind him as surety.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 1807–1815; Dec. Dig. § 517.*]

6. APPEAL AND ERROR (§ 499*)—QUESTIONS REVIEWABLE — RULINGS ON REQUESTED CHARGES—REVIEW.

A bill of exceptions complaining of the refusal of a requested charge which fails to show that the charge was presented at the proper time, and that the refusal was excepted to at the time, is not sufficient on which to base an assignment of error.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2295–2298; Dec. Dig. § 499.*]

Appeal from Uvalde County Court; T. M. Milam, Judge.

Action by the Uvalde National Bank against F. E. Seawell and others. From a judgment for plaintiff against all defendants, and in favor of defendant M. Connor against defendant J. H. Patterson on the latter's plea of contribution, defendant M. Connor appeals. Affirmed.

Jno. W. Hill, of Uvalde, T. H. Ridgeway, of San Antonio, and Martin & Martin, of Uvalde, for appellant. W. D. Love, L. Old, and L. E. Lanier, all of Uvalde, for appellees.

MOURSUND, J. The Uvalde National Bank sued F. E. Seawell, M. Connor, and J. H. Patterson upon a promissory note for $815, alleging that the note was a joint and several obligation, and that Connor's name was signed thereto by Seawell, who was duly authorized to sign said Connor's name thereto. Connor filed a plea of non est factum, a general demurrer, and general denial. Patterson admitted the execution of the note, and prayed for judgment over against Seawell for any amount he might have to pay, and also for contribution over against Connor. Connor also filed a plea for judgment against Patterson for half of any amount that Connor might have to pay in the event it was decided that he was a surety upon the note. This is the second appeal in this case. See 156 S. W. 1092.

Upon the trial now appealed from the following verdict was returned:

"We, the jury, find for the plaintiff and against all the defendants for the sum of $815, with interest at the rate of 10 per cent. per annum from March 15, 1911, and 10 per cent. of total amount of principal and interest as attorney's fees, and we further find in favor of defendant M. Connor and against defendant J. J. H. Patterson on defendant Patterson's plea of contribution.            E. B. Brunt, Foreman."

Judgment was entered in accordance with the verdict. M. Connor appealed.

[1, 2] By the first assignment of error it is contended that error was committed in not permitting Seawell to answer the question whether he knew, when he executed the note for himself and Connor, that all of the parties on said note were equally bound on same. We fail to see the materiality of the testimony. If Seawell only had authority to sign Connor's name as a surety, such fact would be a complete defense. If he did have authority to sign it in the manner in which he did sign it, the fact that he knew, as a matter of law, what the effect thereof would be, could not affect the liability of Connor. His knowledge of the law could not affect the issue of Connor's liability, nor do we see how it could impeach his credibility. The assignment is overruled.

[3] Nor did the court err in refusing to permit Seawell to answer the question: "What is the difference between the liability of a principal and a surety on a note?" The witness' statement of the law on the point mentioned in the question could have cast no light upon the material issues in the case. The second assignment of error is overruled.

[4] By the third assignment complaint is made because the court did not permit Seawell to answer whether it was not a fact that he only had authority from Connor to execute a note making Connor a surety on same. The affirmative answer to this question would have been the mere conclusion of the witness, and certainly not binding upon the payee of the note. It was proper to require the witness to state just what was said by Connor, and, if what was said gave authority to Seawell to sign the note sued upon in the manner in which it was signed, his erroneous conclusion that it did not give such authority would not deprive the payee of the right to recover upon the note. Upon the first trial of this case the parties testified to their conclusions, and in our opinion we suggested that, if they had been required to state the conversation, instead of their conclusions, some of the questions would not have arisen. The court, upon the second trial, was seeking to comply with that suggestion, and committed no error in refusing to permit the questions to be answered which called for conclusions of the witnesses. Both Connor and Seawell testified fully in regard to what was said in the conversation relied upon by appellee bank to give authority to Seawell to execute the note in behalf of Connor, and it was unnecessary and improper for their conclusions to be given in evidence. The assignment is overruled.

[5] The assignments of error after the

third are not numbered consecutively, and the next one presented is the seventh, by which it is asserted that error was committed in permitting the introduction in evidence of the note sued upon. This assignment may be considered in connection with the twentieth assignment, which raises the same issue, namely, whether the evidence is sufficient to support a finding that Seawell was authorized by Connor to sign the latter's name to the note sued upon in the way in which it was signed. In deference to the verdict of the jury, we find that in July, 1910, Seawell asked Connor to sign a note with him for $753, payable to appellee bank, and told Connor the length of time he wanted the money; that Connor agreed to do so, and told Seawell to sign Connor's name to the note; that the note was executed pursuant to said understanding; that about the time the note became due he received notice from the bank, and shortly afterwards, when passing the bank, he met Connor, and told him the note was due, and that he would like to renew it; that Connor agreed to this, and they went to Mr. Rheiner, the cashier of the bank, and told him they wanted to renew the note; that Rheiner figured up the amount, counting in interest for the term for which the new note was to run, and made out a note for the amount of $788.60, bearing interest from maturity; Connor told Seawell to sign his name to said note, and Seawell did so. When said note became due the bank sent out notices upon printed forms to the signers stating the amount of the note, its date, and the date it matured, and also sent out typewritten notices. Seawell went to Connor's farm and told him the note was due again, and that he wished to renew it, and Connor said, "All right, go ahead and sign my name to it again just like you did before." Nothing was said about the amount of the note nor the interest, nor when it was to be due, nor when it was to be dated; Connor just told him (Seawell) to sign his (Connor's) name to it without any limitations or restrictions whatever. A new note was made out which was dated back to the time when the other became due, interest for the new term was figured and added to the face of the renewed note, making it $815, the new note was written so as to bear interest from maturity, the same form was used as in the previous notes, and Seawell executed same in behalf of himself and Connor. This is the note sued upon. Connor admitted that he knew it was the custom of the bank to figure the interest in as a part of the amount of the face of the notes and make the note bear interest only from maturity. The bank sent two notices by mail to Connor, as well as the other makers, every time one of the three notes matured, which notices stated the amount, date, and date of maturity of the note to which they related. Connor offered to pay the bank

one-half of the note sued on, stating that such half amounts to about $400. Connor said nothing about such offer being a compromise or its being made to keep from being sued. Connor testified upon the former trial that he gave Seawell authority to sign his name to a note when Seawell came to his place, and that there was nothing said about the amount, terms, interest, or conditions; that he just authorized him to sign his (Connor's) name to a note, and that was all there was to it. Upon this trial he testified that he "guessed" he did so testify, but that he supposed it was only a $200 note, and insisted that he never authorized the signing of his name by Seawell to any note, except one for $200, which testimony is in direct conflict with Seawell's, and must be disregarded in deference to the verdict. Appellant lays much stress upon certain statements made by Seawell upon cross-examination to the effect that he did not ask Connor for permission to sign his name as a principal obligor; that Connor did not give him permission to sign his name as a principal obligor; that he did not ask Connor for permission to sign his name as a joint and several maker, and Connor did not tell him to sign his name as a joint and several maker. Seawell follows this testimony up with the statement that Connor just told him he would go on the note with him again. It is apparent that the witness was not attempting to state his legal conclusions, but merely that nothing was said about "principal obligor" or "joint and several maker." We conclude that the evidence amply supports the finding that Connor gave Seawell authority to execute the note for Connor, and did not limit such authority so as to require Seawell to have the note show on its face that Connor was to be bound to the bank only in the capacity of a surety. The assignments are therefore overruled.

There is no merit in the fifteenth assignment. The evidence is amply sufficient to warrant a finding that Seawell's authority was not limited to the execution in behalf of Connor of a note for only $200.

[6] The eighth, ninth, and tenth assignments complain of the refusal of special charges. The bill of exceptions, which was filed on the day after the charge of the court was submitted to the jury and the special charges refused, merely recites that: "Now comes the defendant M. Connor, and excepts to the court's action in refusing to give to the jury the following special charges," etc. Such bill of exceptions fails to show that the special charges were presented to the court at the proper time, and that the rulings in refusing to give the same were excepted to at the time they were made. Price v. Lauve, 49 Tex. 80; I. & G. N. Ry. v. Mercer (Civ. App.) 78 S. W. 562; Anderson v. Anderson, 23 Tex. 640; Collins v. Bank, 75 Tex. 255, 11 S. W. 1053. The bill of exceptions is not sufficient to base assignments of error

upon, and the assignments are therefore overruled. But if the bills of exception had been sufficient to show that the charges were presented before the court's charge was read to the jury and then refused, and such refusal excepted to at the time, we would hold that no error was committed in refusing to give such special charges.

The judgment is affirmed.