## TOMPKINS MACHINERY AND IMPLEMENT COMPANY V. PETER & SHERRILL.

### No. 7298.

**Fact Case—Evidence of Extent of Agency.**—An agent of a creditor presented an account. Upon it were items which had been a subject of correspondence, the creditor firm insisting upon payment, the debtor firm refusing. The debtor firm requested the agent to strike from the account the disputed items. This the agent did, making settlement for the balance which was undisputed, and he executed a receipt in full. The machinery, payment for which was contested, was then at the railway depot, and the debtors and the agent went to the depot and the agent informed the keepers of the depot that he had taken back the machinery. The creditor firm at once repudiated the settlement made by the agent; the agent in fact had no power to take back the machinery. This settlement was the only transaction the agent ever had with the debtor firm. *Held*, that it was the duty of the debtor firm to ascertain the extent of the power of the agent with whom they dealt; his presenting himself as agent and his declarations to that effect was no evidence of the fact; power to collect did not involve power to compromise or to remit any part of the debt; and the settlement by the agent against his instructions did not bind his principals.

APPEAL from Denton. Tried below before Hon. D. E. BARRETT. No statement is necessary.

*Edward Gray* and *W. M. Edwards*, for appellant.—A special agent derives his only authority from the instructions given him by his principal about the special business in question, and one dealing with him must know at his peril what such instructions are, unless the act is in the apparent scope of an agent's authority. To charge the jury that defendant must have notice of instructions given by principal to his agent not to so act to be bound by them is charging on the weight of testimony, in that it assumes that but for the secret instructions the agent was authorized to do the act. Mech. on Ag., secs. 273, 274, 279, and authorities cited; McAlpin v. Cassidy, 17 Texas, 450; Rev. Stats., art. 1317; Golden v. Patterson, 56 Texas, 628; Gay v. McGuffin, 9 Texas, 501; Pillman v. Frieberg, Klein & Co., 2 Ct. App. C. C., sec. 582, and authorities cited.

*F. E. Piner* and *Walton, Hill & Walton*, for appellees.—1. The agency of Pickens is not in dispute. The question is as to the extent of his authority as agent. His acts in that connection may be considered to

shed light on his authority. The acts, facts, and circumstances were all properly let in evidence (outside his statements and declarations, and they, we believe, were wrongfully refused admission, because they were part of the res gestæ in the exercise of his agency, after agency established by plaintiff itself), to enable a true reading of the authority vested in him to adjust and settle with defendant when he was sent over to Roanoke.

2. The verdict of the jury is not contra to the charge of the court. Ordinarily it is agreed that an agent to collect would not have power and could not bind his principal by taking goods or commodities back after they had been sold and delivered according to contract; but the facts in this case are extraordinary, and demand the application of different principles, viz., good faith, bona fide dealing, rights acquired, deception and fraud rebuked, etc. And in the application of such, specious arguments and narrow views set up by plaintiff can not avail.

COLLARD, JUDGE, *Section A.*—Suit by the Tompkins Machinery and Implement Company, a private corporation, against Peter & Sherrill partners in a mercantile and farm machinery business at Roanoke, Texas, for the alleged value of five pulverizers shipped by plaintiff from Dallas to them, and freight on five pulverizers. The suit was predicated on a written contract, as follows:

"ROANOKE P. O., TEXAS, July 31, 1885.
"*To Tompkins Machinery and Implement Company, Dallas, Texas:*

"You will please order for us, to be delivered on cars at Dallas as per our order, ten No. 2 Chicago Screw Pulverizers and Seeders, for which we agree to pay $1170, as hereafter expressed, and to pay $100 cash, advanced charges to cover freight from factory to Dallas. Payments for $1170 to be made as follows: Note $390 to be paid November 1, 1885, with 10 per cent interest; note $390 to be paid February 1, 1886, with 10 per cent interest; note $390 to be paid October 1, 1886, with 10 per cent interest. [Signed] "PETER & SHERRILL."

It is alleged in the petition, that the expression in the contract, "as per our order," meant that the defendants could order the pulverizers shipped part at a time or all at a time. It is alleged, that plaintiff had already shipped to defendants one of the pulverizers, and on August 5 delivered to defendants the other four, in pursuance of the contract, by placing them aboard the cars at Dallas, consigned and addressed to defendants at Roanoke, Texas; that by mutual consent the contract was cancelled as to the other five pulverizers, and they were not shipped. The amount claimed in the petition is $634.80.

Defendants, besides demurrer, general denial, and plea in bar by limitation of two years, answered:

"That on the 24th of November, 1885, defendants made a complete and full settlement with plaintiff of all accounts and demands of every nature then standing by and between the said plaintiff and defendants, and that all matters then outstanding between plaintiff and defendants by account or otherwise were then and there fully adjusted and settled; all of which will fully appear by reference to a receipt executed and delivered to defendants by W. Pickens, who then and there, in making said settlement and executing and ·delivering said receipt, was and so acted as the duly constituted agent of plaintiff.   *   *   *   Defendants aver, that any and all matters existing between plaintiffs and defendants in reference to said screw pulverizers and seeders were in said settlement mutually adjusted and settled, and defendants were then and there fully acquitted and discharged of any and all obligations, liabilities, or demands in reference to the same."

The Pickens receipt is as follows:

"ROANOKE, TEXAS, November 24, 1885.

"Received of E. B. Peter, on account of settlement of account of Peter & Sherrill with Tompkins Machinery and Improvement Company, one note for $140; one do. for $20; one do. for $200; one do. for $200; cash, $46.17; for account Tompkins Machinery and Improvement Company.                                        "W. PICKENS."

Plaintiff replied to defendants' answer, stating that it had a large running account with defendants, and that the receipt given was on account of other matters and was not intended to cover the charge for the pulverizers, and that Pickens had no authority to bind plaintiff in the settlement set out by defendants; and further, that plaintiff notified defendants that Pickens had no such authority immediately after the alleged settlement, and when plaintiff first learned of it.

Verdict and judgment for defendants.   Plaintiff appealed.

At the time the order for the pulverizers was given one of them was already in possession of defendants; plaintiff shipped four others, and by agreement the other five were never shipped.   One Nichols was agent of plaintiff, and as such procured the order for the ten pulverizers while at Roanoke.

Sherrill, one of the defendants, testified, that he signed the order; that in about half an hour after it was signed, when Nichols had walked across the railway to the livery stable and back, he (witness) told Nichols not to ship the pulverizers until instructed by him to do so, and Nichols assented; and the next day witness wrote to Nichols at Fort Worth, where he said he would be, telling him not to ship the machines.   One Pickens was sent to Roanoke to settle or collect the account due by defendants.   It was a general account, containing many items, including the ten pulverizers.   He further testified: "Pickens was plaintiff's agent, and came to Roanoke to settle plaintiff's account

with defendants in response to a written wish on the part of defendants. Defendants requested Pickens to strike out the item of pulverizers; this he did. * * * Peter, the sole proprietor, paid Pickens in cash and notes the balance due plaintiff, deducting $49.80 freight on the pulverizers, and took the receipt from Pickens set out above." Sherrill says he took Pickens to the railway agent where the four machines were (never having been received by defendants), and Pickens there told the agent he had taken them back and would order them away. The machine in possession of defendants all the while was paid for.

Peter corroborated Sherrill in the main, and in addition said he had paid the notes delivered to Pickens.

There was a long correspondence between plaintiff and defendants about the payment for the machines which (four of them) had been sent to Roanoke, one being already in possession of defendants. The correspondence began by plaintiff forwarding to defendants four of the machines and its bill for the ten, and $49.60 freight charges. The letters of defendants claimed that they had countermanded the order, and finally stated that they had not received the machines; that they were yet at the depot; that they did not consider that they had bought them, admitting that they could be made to pay for all of them (in one letter).

Plaintiff's letters insisted on compliance with the contract, but on October 17, 1885, yielded so far as to cancel the order for the five machines not shipped, and denied receiving countermanding order. November 2, 1885, defendants wrote plaintiff that they had not been able to sell any of the machines, and asked what they should do with them, and at the same time requested plaintiff to send them a statement of their account. Pickens, on November 24, as before stated, executed the receipt to defendants, and on the 29th of November, 1885, plaintiff wrote to defendants, repudiating the settlement, declaring that Pickens had no power to make it, and demanded performance. Peter, then sole member of the firm, wrote, declining to perform the contract, and informing plaintiff that he had their agent's receipt in full of all indebtedness, and stated that he would abide by it. Plaintiff brought this suit on the written contract, November 17, 1887.

It was in proof, that when plaintiff sent Pickens to Roanoke to settle or collect the account he had special instructions to have nothing to do with the controversy about the machines and the freight charge, and to make no settlement in reference to them unless defendants would settle in strict compliance with the terms of the contract. Only one of the notes was due.

On the trial defendants offered the Pickens receipt in evidence, and it was objected to by plaintiff, on the ground that it had not been shown that he was the agent of plaintiff authorized to make the settlement and execute the receipt. The overruling of the objection and the admission of the receipt is assigned as error. Pickens' power to make

the settlement and strike from the account the machines and freight charge is raised in several different forms by assignment, and especially by assignments attacking the verdict as being unsupported by the evidence.   It is not necessary to treat each assignment in order, as they all tend to one point.   A general discussion of the question will suffice. From the foregoing, it can not be said that Pickens had authority to take back the machines or to settle the controversy growing out of the transaction concerning them, except to receive payment of the price agreed on.   As to this the evidence is positive and uncontradicted. His attempt to do more was an abuse of his actual authority and a violation of his actual instructions.   The appellees, however, contend that he was sent over to Roanoke in answer to their request to send their account or a statement of it for settlement, that he had the whole account, and under the circumstances they were justified in believing that he could adjust all matters of dispute, take the machines back, and credit the account with their price and the freight; that this was the apparent scope of his authority.   We can not agree to this.   Plaintiff had persistently refused to receive the goods back during a long correspondence, and as persistently demanded a strict compliance with the contract.   When Pickens was sent with the account it was the duty of defendants to ascertain his agency, if he had any, and its extent.   Nothing had been said or done by plaintiff proclaiming Pickens agent except to send him with the account.   Very little authority could be inferred from this fact.   This was defendants' first transaction with him as plaintiff's agent.   It was but natural and prudent under the circumstances that they should inquire and learn what kind of an agent he was and the extent of his powers—at least the law charged them with this duty, and if they neglected it they did so at their own peril.   They had to look to it and know if he had any authority at all.   His presenting himself as agent and his declarations to that effect was no evidence of the fact.   Having no authority in writing, they assumed that he was a duly authorized agent with full powers.   They took the risk of this being true.   It turned out, so far as the testimony gives us any light upon the subject, that he only had authority to collect the debt and none to commute or compromise.   He may have had other authority, but the testimony does not show it.   The testimony is positive, so far as it goes, that he was forbidden from exercising such other authority.   The actual authority then must control the rights of the parties.   There is no incidental intendment of law or fact deducible from the actual power that could add to it the right to settle the claim except as prescribed in the contract, or to remit any part of the debt.   Robson v. Watts' Heirs, 11 Texas, 764; McAlpin v. Cassidy, 17 Texas, 449; McAlpin v. Ziller, 17 Texas, 508; Merriman v. Fulton, 29 Texas, 98; Story on Agency, secs. 97–102 inclusive.

There is no fact in the case suggesting a "holding out" of Pickens as agent with authority to compromise. Looking to the testimony, that principle can not be invoked. Nor is there any question of ratification involved in the case. The act of the agent was repudiated at once, no benefit was received from it by plaintiff, the machines and the freight charge were stricken from the account, and the amount paid was for other items in the account the justice of which was not denied. Not a dollar of the amount paid was on account of the matters involved in this suit.

Solely upon the ground that it was not shown by the testimony that Pickens had authority to take back the machines and credit the account with their price and with the freight charge, we conclude that the judgment of the court below should be reversed and that the cause should be remanded for a new trial.

*Reversed and remanded.*

Adopted May 17, 1892.