## COULSON v. STEVENS.

[85 South. 83, In Banc. No. 20907.]

1. ALTERATION OF INSTRUMENTS. *Unauthorized alteration by stranger
   does not invalidate note.*
   A promissory note is not invalidated because of the unauthorized
   alteration thereof by a stranger thereto.

2. ALTERATION OF INSTRUMENTS. *Unauthorized alteration of note
   may be ratified by owner.*
   An unauthorized alteration of a promissory note may be ratified
   by the owner thereof, or by his duly authorized agent. .

3. PRINCIPAL AND AGENT. *Agent authorized to accept and collect note
   could not alter it or ratify alteration.*
   Authority in an agent to alter or to ratify an alteration by an-
   other of a promissory note belonging to his principal cannot be
   implied from authority expressly granted to him to accept the
   note for his principal, to pledge it as security for debt, and to
   collect it when due.

4. PRINCIPAL AND AGENT. *"Implied authority." of agent defined.*
   An agent's "implied authority" is that only which is proper,
   usual, and necessary to the exercise of the authority expressly
   granted.

5. BILLS AND NOTES. *Partial failure of consideration is defense pro
   tanto.*
   A partial failure of the consideration of a promissory note can be
   pleaded by the maker as a defense pro tanto when sued thereon
   by the payee.

APPEAL from chancery court of Leflore county.
HON. JOE MAY, Chancellor.
Suit by Mrs. Hannah L. Coulson against Floyd A.
Stevens. From a decree dismissing an original bill,
plaintiff appeals. Reversed and remanded.
See, also, 79 So. 766.

*Monroe McClury* and *F. L. Mounger,* for appellant.

The evidence conclusively shows that the words "or bearer" were inserted in the note by the stenographer of the Coulson Lumber Company at the bank cashier's request, and that neither had any authority to do so; and the complainant, Mrs. Coulson, had no knowledge of this change. The bank cashier and the stenographer both were strangers to the transaction and their action can have no effect on the complainant's rights. *Croft* v. *White,* 36 Miss. 455.; *Ferguson* v. *White,* 18 So. 124. The act of a stranger, without the participation of the party interested, is a mere spoliation or mutilation of the instrument not changing its legal operation, so long as the original writing remains legible. *Bridges* v. *Winters,* 42 Miss. 143. "A material alteration by a stranger, without the privity of any of the parties thereto, will not render an instrument void, if it can be shown by evidence that the language was as it originally stood." 1 R. C. L. 23.

The general rule is held to be that erasures, interlineations and changes, however material, made in and upon an instrument by a stranger to it, without the privity or consent of the parties interested, constituted a mere spoliation, as distinguished from an alteration, and are in legal contemplation wholly immaterial and ineffective to give to the instrument any other or different meaning or operation than that which attached to it before the change. 2 Corpus. Juris., 1233; 1 R. C. L. 993, last paragraph.

Neither the stenographer, nor the bank cashier was the agent of the complainant, but "where the change is made by one who is or was the agent of one of the parties, but without any authority from the principal, either express or implied from the circumstances, to make any change, and the matter is outside the scope of his particular employment the act is generally con-

sidered to be a mere spoliation and has no effect upon the instrument, or the rights of the parties, unless ratified. 2 Corpus. Juris., 1236.

And it has been held that a bank cashier has no authority to make a material alteration in a note payable to the bank, and the rights of the bank cannot be affected by his act in making such an alteration, unless the cashier in doing the act was acting within the authority conferred upon him by the bank or in the line of his duty, or unless what he did was sanctioned or ratified by the bank. 2 Corpus. Juris. 1237, Note 7e.

"There must be an agency in fact to make the alteration, or the relations of the parties must import authority from the principal, a change by one who is merely the custodian of an investment is at most a spoliation the act of a stranger, and will not destroy the validity of the instrument. 2 Corpus. Juris., 1237-38.

There was no ratification of this spoliation by the complainant. She knew nothing of it until payment of the note was refused on this ground. The chancellor held in the court below that the husband of the complainant ratified the act of the stenographer and cashier and that the complainant was bound by such ratification of the husband. But we submit that the husband did not ratify this spoliation and could not do so. The husband was not the agent of the complainant. The complainant simply consented to allow the note to be used as collateral for a loan, and if the husband had anything to do with it at all it was simply to hypothecate it. The alteration by an agent to discount a note does not void the note. *Hunt* v. *Gray, Jr.,* 35 N. J. 227, 10 Am. Rep. 232.

The husband had no authority to alter the note. How then could he ratify its alteration. An agent cannot ratify an unauthorized act or contract performed or entered into by a third person on behalf of his principal, unless he has authority to ratify it or had authority to perform the act in person or to authorize the act to

be performed by another. 2 Corpus. Juris. 473-474.

The stenographer had no thought at all, he was simply a stenographer, carrying out the instructions of the cashier, and the cashier, in causing the words "or bearer" to be inserted, had no intent to injure or defraud anyone. He had a hazy idea that these words were required to make the note negotiable and thought he was carrying out the intention of the parties, and simply adding words which the law would supply. He was mistaken in this, but his act and the act of the stenographer of the lumber company was not the act of the complainant and was nugatory and inoperative.

"An alteration innocently made, without improper motive, to conform the instrument to the intention of the parties at the time of its execution will not avoid it. It is reasonable and just to permit a party to show that the alteration was under circumstances rebutting every presumption of improper motive. So, the intent must be fraudulent; or, in other words, done with an eye to gaining an advantage." *Foote* v. *Hambrick,* 70 Miss. 169-170, citing *Croswell* v. *Lambree,* 81 Me. 44, a case in which the words "or bearer" were inserted in a note and in which it was held that if the alteration, though unauthorized by the maker, was innocently made, without any fraudulent or improper motive, it would not avoid the note.

But, if the change in the note does not invalidate the note as evidence of the indebtedness, it is well settled that the right to recover on the original consideration remains, and the lien can be foreclosed. 1 R. C. L. 1006 & 1007, Corpus. Juris., 1181-82. "The alterations, in order to be available to the appellees, must have been made with fraudulent intent." *Bank* v. *Lauderdale,* 111 Miss. 39.

In a court of equity a mortgage is regarded as an incident of the debt, and where a mortgage has released or discharged the debt by a fraudulent alteration or

destruction of the written evidence of it, he ought not to be permitted to sustain a suit for its recovery; but, where the alteration was not fraudulent, although the identity of the instrument may be destroyed, we think it should not cancel a debt, of which the instrument was merely evidence. If there was no attempt to defraud, there is no reason why a court should not assist the creditor as far as it can consistently." *Vogle* v. *Kippe,* 34 Ill. 100, 85 Am. Dec. 298.

The defendant bought and retains the property and has never paid for it, but sets up this unauthorized act of the stenographer and cashier as the reason why he should not pay.

In *Croft* v. *White,* 36 Miss. 458, as suit at law, it is said: "Even admitting, however, that the note was a nullity, the testimony was competent, under the common count, against White at least; the jury, if satisfied of his liability to plaintiff, under the evidence might have returned a verdict against him."

We, therefore, respectfully submit that the appellant was entitled to recover on the original contract with Stevens for the purchase money and to enforce her vendor's lien on the property conveyed to Stevens and that the decree of the court below, denying her this right, should be reversed.

*O. L. Kimbrough* and *Hill & Witty,* for appellee.

The second contention of the appellee is that the note was materially and fraudulently altered by inserting the words "or bearer;" that this was done with the full knowledge, consent and approval and acquiescence of Coulson, the fully authorized and general agent of Mrs. Coulson, that through him she is chargeable with the consequences of the alteration; and that, the note having been fraudulently altered, and Coulson having fraudulently ratified and acquiesced in the alteration,

not only is the note vitiated as an evidence of debt but the right of action itself is destroyed.

In the first place, the note admittedly having been altered, it devolved upon the complainant to explain the circumstances of the alteration and to exculpate herself from blame. This proposition has been tacitly admitted by complainant, but it is settled law. See authorities under section 26, "Alteration of Instruments," Bobbs-Merrills Miss. Dig.

We take it that there is no controversy on the proposition that the alteration by inserting the words "or bearer" is a material alteration; that this point is clearly settled in 42 Miss. 135, 69 Miss. 862, 16 L. R. A. 468. That the alteration was fraudulently made, is settled by the definition of a fraudulent alteration laid down in 2 C. J. 1228: "The term 'alteration' being usually applied to the act of a party to an instrument, imports some fraud or improper design to change its effect; the fraudulent purpose is a conclusion of law from the fact that the change is wilfully made." In *Bank* v. *Cole,* 71 So. 260, at page 262, our own court states the rule: "On the evidence if these alterations were in fact made and the chancellor so found, they were manifestly made for the purpose of evidencing the existence of a vendor's lien which in fact had been waived, and were therefore made with a fraudulent intent, from which it necessarily follows that appellants, Bank of Lauderdale and Ballard, can recover neither on the note sued on by them nor on the original indebtedness for which it was given." See also in the note at bottom of page 196, 4 L. R .A., where it is said: "An alteration which to any degree varies the legal effect of the instrument to the prejudice of the other party, releases the latter from it, though no actual fraud is meditated. The alteration is a fraud in law when not in fact;" citing authorities.

If Mrs. Coulson had obtained knowledge of the altera-
tion and acquiesced in it, as did her husband, then cer-
tainly there would be no denial that she would be liable
for the consequences.

In 2 C. J. 1237, it is said: "An alteration need not
be made by the hand of the grantee, payee or obligee.
It is enough if this is done with his privity or by his
procurement. If a change is made in an instrument by
a duly authorized agent, the principal will be bound by
the act as if done by himself;" and in Note 11, on same
page it is held that "an alteration of a note by a third
person with the knowledge, consent and active partici-
pation of the holder is not the act of a stranger, but of
the holder." Also, in 2 C. J. 1256, the rule regarding
acquiescence, without objection until the enforcement
of the instrument is sought, and with knowledge of the
facts, may constitute sufficient ratification:" In 2 C.
J. 1258, the law is stated thus: "Ordinarily a plaintiff
cannot avoid the effect of an alteration of which he is
chargeable with knowledge, after he had brought suit
upon the instrument in its altered form, since by suing
upon the altered instrument he is deemed to have rati-
fied the alteration."

So in 1 R. C. L. at the top of page 1032, the rule is
stated again: "In accordance with the general proposi-
tion that an act which may be authorized or consented
to in limine may be effectually ratified after it has been
performed, it is equally well established that a material
alteration in an instrument may be ratified and adopted
subsequently by any person affected by it, and such
subsequent ratification of the alteration will have the
same effect as and be in all respects equivalent to as-
sent to the alteration previously given or to an original
authority granted." The principle under discussion is
elementary in all contracts, but the authorities above
mentioned clearly enunciate the rule.

If, then, the acquiescence of Mrs. Coulson in the alteration would have destroyed the note, then, in like manner, the acquiescence of her agent, her husband Coulson is imputable to her. This principle of the law has been recently passed upon by our court in the case of *Mitchell* v. *Campbell,* 72 So. 231, in which case a lease of real estate had been made for illegal purposes, with the knowledge of the lessor's agent, and this court held that the knowledge and consent of the agent was imputable to his principal. The rule is also repeatedly emphatically announced in the following Mississippi Cases; 78 Miss. 217; 20 Miss. 803; 2 S. & M. 476; 25 Miss. 591. We deem it sufficient merely to cite those cases.

Smith, C. J., delivered the opinion of the court.

This is an appeal from a decree dismissing an original bill. The appellant, claiming a lien on certain property to secure the payment of the promissory note executed and delivered to her by the appellee, exhibited her bill in the court below against the appellee, praying for a decree for the amount claimed to be due her and for the sale of the property for the payment thereof. The material facts are, in substance, as follows:

In 1916 the Coulson Lumber Company, a corporation domiciled in Memphis, Tenn., owned and operated a sawmill in Leflore county, and in addition to the sawmill and its equipment was in the possession of forty acres of land leased by it from Nichols for a mill site, etc., and of a right of way over Nichols' land for a tram railroad. This lease was to run for five years from the 14th day of February, 1916, and provided for a renewal at the expiration thereof for another period of five years at the option of the lessee. The rent to be paid by the Coulson Lumber Company was five hundred dollars a year, evidenced by its promissory notes. In

March, 1916, the Coulson Lumber Company and the appellant, who held a lien on a portion of the property to secure a indebtedness due her by the lumber company, sold the sawmill and other property and assigned the Nichols lease to the appellee for the sum of three thousand dollars, one thousand and five hundred dollars in cash and a promissory note to the order of the appellant due and payable one year after its date. This sale was negotiated for the lumber company and the appellant by W. N. Coulson, president of the company and husband of the appellant. According to the appellee Coulson wanted the note made payable to the appellant or bearer, but he declined so to do. This was denied by Coulson. In October, 1916, the appellant indorsed this note in blank and Coulson deposited it with the People's Bank & Trust Company of Memphis as security for a loan from the bank to the Coulson Lumber Company, or delivered it to W. N. Coulson with permission so to use it, and a few days thereafter Horace N. Smith, an officer of the bank, carried the note to the office of the Coulson Lumber Company and had E. C. Aldridge, one of the company's stenographers, to change the note by inserting therein after appellant's name the words "or bearer," making it thereby payable "to the order of Mrs. Hannah L. Coulson or bearer." This alteration was made without the knowledge or consent of Mrs. Coulson or her husband. Several days thereafter Aldridge advised W. N. Coulson thereof, but he did not communicate this fact to the appellant. At the time this change was made in the note by Smith and Aldridge section 4001, Code of 1906, was in force, and by it in an action by the assignee of a note payable to the payee or order the maker thereof was allowed the benefit of any defense had by him against the payee prior to notice of the assignment. Such a defense was not available against the assignee of a note payable to bearer.

Prior to the maturity of the note W. N. Coulson wrote the appellee several letters offering to discount the note if he would pay it before maturity. Just prior to its maturity the Memphis bank forwarded the note to a bank at Greenwood, Miss., the home of the appellee, for collection. While the note was in the hands of the bank at Greenwood, Nichols instituted a suit in chancery against the Coulson Lumber Company, Mrs. Coulson, and Stevens, under the provisions of section 537, Code of 1906 (section 294, Hemingway's Code), alleging that the rent due him had not been paid and praying that the amount due Mrs. Coulson on the note here sued on be subjected to the payment thereof. Stevens answered this bill, admitting its allegations, and paid the amount of the note to the clerk of the court to be dealt with as the court should direct. The Memphis bank claimed the money and was preparing to give a bond therefor when Nichols dismissed his suit and Stevens withdrew his deposit. Afterwards, when Stevens declined to pay the note, this suit was instituted by the appellant, to whom the note either had been or was afterwards returned by the Memphis bank. The bill of complaint set forth the alteration of the note with its attendant circumstances.

The instrument by which the sawmill, etc., was sold and the Nichols lease assigned to the appellee contained the following agreement:

"It is distinctly agreed by and between the parties hereto that the said Stevens takes said property relieved from any and all liability which the parties of the first part, or any of them, may be under to the said C. G. Nichols; it being understood that the parties of the first part (the lumber company, W. N. Coulson, and Hannah L. Coulson) are to pay to the said C. G. Nichols the annual rental for the right of way for said tramway across the land of the said Nichols, in accordance with the contract with the said Nichols."

According to Nichols no part of the rent agreed to be paid to him by the Coulson Lumber Company for the years 1917, 1918, and 1919 has been paid. The lumber company admits that a part of this rent has not been paid, but claims that Nichols is indebted to it on account of mutual dealings between them, and that it is ready and willing to pay whatever balance it may be due Nichols, and that it had tried without success to effect a settlement with him. This Nichols denied.

The first contention of the appellee is that the note has been fraudulently and materially altered since its execution. Aldridge and Smith being strangers to the note, the change therein made by them was a mere spoliation and does not affect its validity unless authorized or ratified by the appellant (2 C. J. 1233; *Croft v. White,* 36 Miss. 455; *Bridges v. Winters,* 42 Miss. 135, 97 Am. Dec. 443, 2 Am. Rep. 598; *Ferguson v. White,* 18 So. 124), or by her duly authorized agent. 2 C. J. 1237.

This rule is admitted by counsel for the appellee, their contention being that the change made in the note by Aldridge and Smith was ratified by the appellant's agent, W. N. Coulson. Coulson had no express authority to ratify the making of this addition to the note and no such authority can be implied from that expressly granted to him by the appellant, which was to accept, hypothecate, and collect the note. *Hunt v. Gray,* 35 N. J. Law, 227, 10 Am. Rep. 232; *Bigelow v. Stilphen,* 35 Vt. 521; *Langenberger v. Kroeger,* 48 Cal. 147, 17 Am. Rep. 418; note to *Burgess v. Blake,* 86 Am. St. Rep. 105.

The authority of an agent implied from that expressly granted to him is that only "which is proper, usual, and necessary to the exercise of the authority actually granted" (2 C. J. 576), and authority to alter or to ratify an alteration by another of a promissory note is neither proper, usual, nor necessary to the exercise of the authority to accept, hypothecate, or collect it.

The second contention of the appellee does not clearly appear from his answer to the bill, but is stated in the brief of his counsel to be that the consideration for the note has failed, and in support thereof they say that a part of the consideration for the note sued on is the agreement of the appellant to relieve the appellee from any liability to Nichols because of the assignment to him of the lease and to pay Nichols "the annual rental for the right of way for said tramway across the land of the said Nichols, in accordance with the contract with the said Nichols," which agreement they further say appears from the evidence not to have been complied with. The answer of the appellant's counsel to this contention as it appears from their brief is that: "The alleged indebtedness to Nichols has nothing to do with the case and is no defense against this suit against Stevens. There is no indebtedness to Stevens and the alleged indebtedness to Nichols is not an offset. The record shows that both the complainant and the Coulson Lumber Company are solvent, and the lumber company owns considerable property in Mississippi, and can be made to respond to any judgment that may be recovered against it. There was no fraud or misrepresentation in the sale to Stevens, and Stevens knew that liability to Nichols would be, or might be, incurred. He accepted the warranty and retains the property, and the warranty is enforceable and he must rely on it."

This agreement, whether it be called a covenant of warranty or not, is a part of the consideration for the note sued on, and if the appellant has failed to comply with the promises therein contained the consideration to that extent has failed and can be availed of here as a defense by the appellee, but only to the extent of the injury, if any, that he had sustained because of such partial failure of consideration. *Rasberry* v. *Moye*, 23 Miss. 520; 8 C. J. 752.

The cases relied on by counsel for the appellant are not in conflict herewith, being simply to the effect:

"That where the conduct of a vendor and warrantor of title (who is solvent) is free from misrepresentation or fraud, a mere defect in, or cloud upon, the title conveyed, will not relieve the vendee against payment| of the purchase money, unless there has been an eviction by title paramount; but the purchaser will be remitted to his action on the covenants of warranty in the deed."

*Reversed and remanded.*