NATIONAL CASH REGISTER CO. v. WICHITA FROZEN FOOD LOCKERS, Inc.

No. 14525.

Court of Civil Appeals of Texas. Fort Worth.

May 14, 1943.

Rehearing Denied July 9, 1943.

McGown, McGown, Godfrey & Logan, of Fort Worth, and J. R. Ogle and Smoot & Smoot, all of Wichita Falls, for appellant.

Rogers & Montgomery, of Wichita Falls, for appellee.

BROWN, Justice.

On December 28, 1940, appellee, Wichita Frozen Food Lockers, Inc., a private cor-

poration, acting by its officer, Alfred R. King, gave a written order to an agent and local representative of appellant, the National Cash Register Company, for a certain cash register to be manufactured for the purchaser specially, so that it would be constructed for use in appellee's business, which is disclosed to be that of operating frozen food lockers for the public's use.

This instrument recites on its face that the order is subject to acceptance by the manufacturer at Dayton, Ohio, the place of its domicile; that the chattel should remain the property of the maker until its purchase price, or a judgment for same, is paid in full; that the order shall not be countermanded; and the purchaser, in keeping with the contract made by the parties, executed a promissory note for the unpaid portion of the purchase price, which is dated March 1, 1941, and provides for 35 monthly payments of $32.50 each, and the last payment to be made in the sum of $17.50.

The note provides for an acceleration of the maturity of all payments on default of any stipulated payment.

The order, which is, in effect, a chattel mortgage, discloses on its face a place at the bottom thereof in which the manufacturer may accept same, and it appears that same was accepted on January 8, 1941, and the machine was manufactured as ordered and was delivered to the purchaser, who paid $50 down and subsequently paid two monthly instalments, namely, the one due April 1st and the other due May 1st, 1941.

No further payments were made and on August 3rd, 1942, the seller brought suit on the note and to foreclose its chattel mortgage lien. Copies of the chattel mortgage and note were made exhibits to the petition and it was agreed that the mortgage should be copied in the transcript as such exhibit and not copied in the statement of facts.

The defendant answered, admitting that it executed the note and mortgage and that it paid a down payment of $50 and the first two monthly instalments, and then pleads, in substance, that, after it had done the admitted acts it went out of the retail sale of merchandise and was no longer in need of the cash register; that this situation was disclosed to the plaintiff and it was then and there agreed by and between the parties that, if the defendant would surrender the property to the plaintiff, it would accept same and cancel the obligation of defendant

and retain the sums theretofore paid to it by defendant; and that, agreeable with such understanding, the defendant delivered the property to the plaintiff, who has since had possession thereof, although it has failed and refused to return to defendant the note executed by it, "although said notes have been fully and finally paid to the plaintiff".

It further pleaded that but for the agreement to cancel the obligations due by it to the plaintiff it would have met same as it fell due, and it prayed for a cancellation of same, and that plaintiff take nothing.

The plaintiff's general denial joined the issue thus presented in defense of the obligation sued upon.

E. E. Watkins testified that he was the salesman who contacted Mr. King before and when the cash register was ordered; that, at such time, he was employed by a Mr. Harper as a junior salesman for the National Cash Register Company, and remained in this position until January 7th, 1941, when witness was made a "salesman in charge of this territory". That Harper personally paid his salary when he was working under him. Witness' testimony shows that neither he nor the Wichita Falls office collects the indebtedness due the company, but that the customer is notified from the Fort Worth office to make his payments to such office, and that a notice, together with an addressed envelope, is sent the customer for his use. This is undisputed. Witness testified that as salesman in charge of the Wichita Falls office he has nine counties in his territory; five in Texas and four in Oklahoma. That he alone is employed in such territory. He testified that the machine was brought to his office during his absence, and without his knowledge.

This witness testified that Mr. King, representing the defendant, asked him to come to his office, that he did so and King asked him to dispose of the machine, and further asked if the company would transfer the account to one of King's friends, in the event King could sell the machine to such friend, and witness told him he thought this could be done.

This witness denied that he had any conversation with King touching the question of returning the machine.

This witness testified that he had no authority to make an agreement to take back property that was sold by the company in cancellation of a debt, and that his

authority is confined "entirely to the selling end".

The objection made by the defendant to such testimony was: that it was immaterial and not shown by the pleadings and is irrelevant; that the witness was in charge of the office at Wichita Falls and has full power and authority to deal with any subject matter.

The cause was being tried to the court and the ruling disclosed by the record was that the evidence would be "let in" and that the law would be looked up afterwards, and that with such understanding the objection was overruled.

On cross-examination the defendant elicited from this witness the fact that he never at any time told Mr. King how limited the witness' authority was, and that he never mentioned his authority; that he and a "service man" were the only persons representing the company in the nine counties comprising the Wichita Falls territory; that the "Fort Worth man" has about 90 counties in his territory over which he has authority and these include the nine in witness' territory.

Mr. King, for the defendant, testified that in June, 1941, he had a conversation in his office with Mr. Watkins; that he told Watkins the situation of his company and asked him if he would take back the machine; that Watkins told him that if the machine were sent back then it would go against his quota, and that witness could send it back in July; that he said to Watkins: "Now, we will lose our down payment and the payments we have made". And Watkins said: "That is right". And witness said: "Well, if I can find a buyer between now and July and he wants to take it over, then I won't lose that money that I paid; the down payment and the payments?" And that Watkins said: "That will be all right"; that Watkins agreed to take the machine back after the first of July and to cancel the note.

The witness said he called Watkins' office after the first of July, and found he was not in and witness sent the machine to Watkins' office.

On cross-examination this witness admitted that the machine was made specially for his company with special "keys" made according to his order and request. (Such "keys" do not mean keys used in a lock, but "keys" on the "key board" of the machine).

When this witness was being questioned about his dealings with Watkins he said that he did not think it was "a little bit peculiar that Watkins would agree to take the machine back in cancellation of his debt when he had paid no more than he did on it", because, said the witness: "He sold it to me and I presumed that he could take it back. That is the reason I called Mr. Watkins."

It appears that on July 21, 1941, the Fort Worth office of plaintiff wrote King in part as follows: "We have received word from our representative in Wichita Falls that you had requested him to take back the cash register you purchased on December 28, 1940, as you were no longer engaged in the retail business, and while he was out of the city this past week you sent the register to his office, explaining that you had no further need for it.

"Please understand that the acceptance of the register at our office there does not mean that it is accepted in cancellation of the contract; in fact, it is being held at your risk."

This letter goes on to say that the machine was built to defendant's order and the order was not accepted with the understanding that it could be returned in cancellation of the contract, and that when defendant purchased the machine it gave its promissory note for the balance of the purchase price; that the note was sent to the Home Office where it is held as collateral and the Home Office expects to make collection on it.

It thus appears that within a very few days after defendant sent the machine back to the Wichita Falls office, he was advised by one in charge of the Fort Worth office—which last named office has supervision over the Wichita Falls office—that the machine would not be taken back in cancellation of defendant's debt.

On July 24th following, King, as president of the defendant, replied to the "Fort Worth" letter, saying that "about the middle of June" he had talked to "your representative" and, in substance, detailed substantially what the witness had theretofore testified to as to his conversation with Watkins.

It is disclosed that the Fort Worth office not only repudiated the attempt to return the machine in cancellation of the debt, but that it made demand for payment of the unpaid and past due instalments.

On September 23, 1941, Maurice J. Leen, an attorney of Dayton, Ohio, wrote defendant that his account with plaintiff had been referred to him for collection. This letter reviews the contention made by defendant, and, in effect, repudiates the proposition of a cancellation of the debt, and gives the defendant until October 3, 1941, in which to make arrangements for payment of the past due instalments and an amicable settlement.

On October 15, 1941, attorneys for defendant wrote the above named attorney that the seller's representative agreed with the defendant, in substance, as heretofore set forth and that if the seller "is unwilling to accept and abide the situation thus resulting, it may resort to the courts".

Plaintiff put A. L. Harper on the witness stand and elicited from him that he was the plaintiff's salesman in charge of the branch office, when the deal was made with the defendant, and that as such he was manager of that local office.

He was asked if, as such local manager, he had any authority or power to take back merchandise in cancellation of a debt, and he answered that he had not.

The defendant objected on the ground that it was immaterial; that it was not shown that any limitation of authority was communicated to Mr. King prior to the transaction at issue; that it is not joined by the pleadings, and is wholly irrelevant, incompetent and immaterial.

The trial court, in ruling on the objections, said: "I will sustain the objection. You can prove it for the purpose of the record, if you want to."

After this incident, the witness was asked if he knew the policy of the company with reference to cancelling and trading back property, or making deals, and he answered that he did, and in answer to the next question stated that the local office manager, or manager, had no authority over such matters.

The defendant then interposed: "The same objection to that testimony." The record shows no ruling on the objection so made, and the witness was then asked to whom the local office manager submits such matters when they come up and he replied that it was submitted to the sales-manager in Fort Worth who, in turn, submits it to the Home Office, or factory, in Dayton, Ohio.

The trial court filed "conclusions of law", recited to be done at "the request of the parties", and rendered judgment that plaintiff take nothing against defendant. The first conclusion asserts that the oral agreement to take back the machine and release the defendant from liability on the notes "was supported by a sufficient consideration by the return of such cash register"; the second conclusion asserts that such oral agreement did not come within the rule forbidding the varying of a written contract by parol evidence; the third conclusion asserts that Section 122 of Article 5939, R.C.S. (the Negotiable Instruments Act), has no application to the facts in the instant case.

We copy the fourth "conclusion": "It is my conclusion that plaintiff is bound by the agent's contract to take back the cash register in cancellation of the note because of the actual, implied and ostensible authority of such agent, acting within the apparent scope of the business entrusted to him, upon which the case was tried.

"Plaintiff is estopped to deny the binding effect of such contract. Plaintiff retained the machine for more than a reasonable time before repudiation by the Home Office and therefore ratified the contract under which it was delivered."

We will not notice the fifth conclusion as it appears immaterial to a disposition of the appeal.

We first dispose of the issues of estoppel and ratification.

The defendant's answer does not raise the issue of estoppel. It was not pleaded, if we understand the allegations of the answer.

Vol. 17, Texas Jurisprudence, par. 16, pp. 146 to 148, citing Texas authorities, declares that, in order to be permitted to rely upon the defense of estoppel it must be specially pleaded, and such contention will not be considered if the issue is not raised by the pleadings, and the evidence thereon will be excluded; that no intendments are made in favor of such plea, but the pleader must allege the facts essential to the existence of estoppel "with particularity and precision".

We hold that the trial court's conclusion that the plaintiff is estopped to deny the binding effect of the alleged oral contract is without pleading or proof to support such conclusion.

There is much that seems contradictory to us in the fifth paragraph of "conclusions", quoted supra.

The theory of ratification of an agent's acts as being binding upon the principal, appears to us to have arisen in cases where the agent was without authority to bind the principal, but that having acted for his principal, the latter, with knowledge of the agent's unauthorized acts, has conducted himself in such a manner as to establish the fact of having ratified the act of the agent.

The defendant made no effort to plead a defense of ratification on the part of the principal of its agent's acts, and if, as has been liberally held, the pleading urging that the plaintiff made the oral contract relied upon by the defendant is sufficient to permit evidence to support a contract made by the plaintiff's agent, which has been ratified by the principal, we are then confronted with the positive and undisputed proof that the agent's acts were not only not ratified, but that the entire transaction on which the defendant relies for relief was repudiated by the plaintiff's agent whose authority was shown to be greater than that of the agent on whose acts the defendant relies, and that same was repudiated by the principal.

■ The conclusion by the trial court that the plaintiff retained the machine for more than a reasonable time before "the Home Office" of plaintiff repudiated the transaction and, therefore, it ratified the transaction, is not supported by the evidence and is untenable.

It was shown by the undisputed evidence that matters affecting the rights of the plaintiff corporation in the local (in this case the Wichita Falls) office are referred to the Fort Worth office and, in turn, by the last named office to the "Home Office" of the corporation.

The defendant simply testified that he carried the machine to plaintiff's local office after July 1st, and made no effort to identify the date.

The Fort Worth office wrote defendant on July 21st, repudiating the transaction, and this letter recites that the "Wichita Falls representative" had advised the Fort Worth office that the machine had been sent to the Wichita Falls office "this past week", while the Wichita Falls representative was out of the city.

These recitations indicate that the letter of the 21st of July was written in less than, or not more than, two weeks after King carried the machine "back". This letter distinctly advises that the machine is being held at defendant's risk.

The Fort Worth office endeavored to collect the balance due on the contract during the month of August, 1941, and being unable to do so, the matter was referred to the "Home Office" of the plaintiff and on September 23rd, following, a letter unequivocally repudiating the matter on which defendant stands for relief was written in behalf of the plaintiff by its attorney.

The plaintiff did nothing to put the defendant in a worse position than that in which he voluntarily put himself. His own testimony shows that he reserved the right to undertake to sell the machine and thereby make himself whole.

It was a machine made according to special specifications for his use, and common sense would advise any reasonable person that the machine could not be sold to the general trade but that it was only valuable to one who conducted a business like that of the defendant.

The evidence does not support, nor does it warrant, a finding that the plaintiff retained the machine for more than a reasonable time before the "Home Office" repudiated the transaction on which defendant relies.

Adverting to the inconsistencies we have referred to above, if the defendant relies upon repudiation by the "Home Office" as a prerequisite to the right to stand upon repudiation, it ill behooves him to assert that he stands upon an oral contract of a local agent, a salesman, or sales-manager of one of plaintiff's local offices, to avoid payment of a solemn promissory note which he executed and made payable to the principal.

This brings us to the first paragraph of the fourth paragraph of the trial court's "conclusions". The trial court justifies his "conclusion" that the principal should be bound by the agent's oral contract, asserted to have been made with the defendant, because of the "actual authority" of the agent, "acting within the apparent scope of the business entrusted to him".

■ Need we dwell upon the meaning of the words, "actual authority"? As-

suredly they mean such authority as was intentionally conferred by the principal upon the agent, or such as the principal either intentionally allows the agent to believe that he possessed, or by want of ordinary care on the part of the principal, allows the agent to so believe. Words and Phrases, vol. 2, Perm.Ed., pp. 214, 215, citing cases Weidenaar v. New York Life Ins. Co., 36 Mont. 592, 94 P. 1.

■ The record before us discloses that the only actual authority that Watkins had when he was dealing with King which came within the apparent scope of the business that was entrusted to Watkins, was to make sales for the principal, and such sales were referred to the principal for acceptance.

We next come to implied authority of an agent acting within the apparent scope of the business entrusted to him.

■ In Coulson v. Stevens, 122 Miss. 797, 85 So. 83, the court, following the authorities, holds that an agent's implied authority is that only which is proper, usual and necessary to the exercise of the authority that has been expressly granted. Vol. 20, Words and Phrases, Perm.Ed., p. 222, citing cases.

■ Under the facts of the case at bar, there is not shown, even by circumstance, any implied authority on the part of Watkins to make the oral contract on which defendant relies.

The apparent scope of the business entrusted to Watkins is not such that any such implied authority may be found.

■ Finally, as to the "ostensible authority" of the agent, "acting within the apparent scope of the business entrusted to him", we find that this character of "authority" is such as a principal, intentionally or by want of ordinary care, causes or allows a third person to believe that the agent possesses. Peterson v. Kuhn, 110 Neb. 372, 193 N.W. 756; vol. 30, Words and Phrases, Perm.Ed., pp. 337, 338 citing authorities.

■ There is no evidence, in the record before us, of any act of the principal which caused or allowed the defendant to believe that the local agent possessed any authority to make any such oral contract as that relied upon by the defendant; and the finding of such "ostensible authority" is without support in the evidence.

■ In Vol. 2, Texas Jurisprudence, par. 214, p. 634, the text avers that one who relies upon an agent being authorized, whether expressly or impliedly, should plead the facts relating thereto, but that a general allegation of agency is usually sufficient as against a general demurrer.

The defendant in the instant suit made no effort to plead agency; his pleading is that his contract was made with the principal.

■ If we take the broadest view possible in this case and proceed on the assumption that this defendant, having pleaded that the contract was made with the principal, may nevertheless pitch his defense on the theory that it was made with the principal's agent who had "actual, implied or ostensible authority while acting within the apparent scope of the business entrusted to the agent" (all of which we do not believe we may do), we are confronted with the fact that the agent in the instant case had no actual authority to make the contract upon which defendant relies. All of the evidence was to the contrary and the testimony of the agent as to the extent of his authority was admissible and same was corroborated by another witness who preceded such agent in the conduct of the identical business, and no one disputed the testimony. Vol. 2, Texas Jurisprudence, par. 137, pp. 538, 539.

■ When we come to reliance by the defendant upon "implied and ostensible authority", we are met with the fact that, other than giving Watkins the purchase order for the machine, the defendant had never had any dealings with or transacted any business with Watkins, and that he had never had any other dealings with Harper, who occupied the position of "sales-manager" for the Wichita Falls office and to which sales-managership Watkins succeeded when Harper left Wichita Falls. And we are further confronted with the fact that there is no evidence of any act on the part of the principal that would cause the defendant to believe that Watkins had the authority to enter into the transaction on which defendant relies.

Such cases as Tompkins' Machinery & Implement Co. v. Peter & Sherrill, 84 Tex. 627, 19 S.W. 860; Franzen v. Universal Credit Co., Tex.Civ.App., 132 S.W.2d 148, writ dismissed; Gunter v. Robinson, Tex. Civ.App., 112 S.W.2d 134; Green v. Priddy, 112 Tex. 567 at page 580, 250 S.W. 656, citing several prior decisions; Southern Rock Island Plow Co. v. Wise et al. Tex.

Civ.App., 107 S.W.2d 750, and Morgan v. Harper, 236 S.W. 71, Comm. of Appeals, are authorities that announce the doctrine on which appellant stands and which forbids a recovery by appellee.

In the case of Tompkins' Machinery & Implement Co. v. Peter & Sherrill, 84 Tex. 627, 19 S.W. 860, the facts therein appear to have been much stronger than those in the case at bar. The agent, with whom the debtors Peter & Sherrill dealt, had been sent by the principal to Peter & Sherrill, at the debtors' request, to make a settlement of the account between his principal and said debtors that had arisen under a contract of purchase of several implements of husbandry, and the agent undertook to take the implements back in part settlement of the account.

Peter & Sherrill contended that the agent was sent to them in answer to their request for a settlement of their account; that the agent had the entire account in his hands, and that, under the circumstances, they were justified in believing that the agent could adjust all matters of dispute, take the machines back and credit the account with their price; and that such was the apparent scope of the agent's authority.

The Supreme Court disagreed with this contention, holding that the debtors had no right to assume that the agent had any such authority as that relied upon; that very little authority could be inferred from the acts of the agent, and this being the defendant's first transaction with such agent, it was but natural and prudent, under the circumstances, that they should make inquiry and learn what kind of agent he actually was and the extent of his powers; that the law charged defendants with such duty and if they neglected it, they did so at their peril.

The judgment of the trial court is reversed and the cause is remanded to such court with instructions to enter judgment for the plaintiff for all instalments on the note that were past due and unpaid on August 3rd, 1942, with six per cent interest on each instalment from the maturity date thereof to November 9th, 1942, and judgment for all the remaining instalments that were not matured on August 3rd, 1942, as of such date with six per cent interest on such sum from August 3rd, 1942, to November 9th, 1942, and that such judgment be made to bear interest from November 9th, 1942, at the rate of six per cent per annum,

and judgment foreclosing plaintiff's chattel mortgage lien on the property described in the petition, with order of sale, and with the usual provisions as to a deficiency judgment and execution thereon, in the event the property does not bring at public vendue enough to satisfy the judgment and costs.

It is so ordered.

### On Motion for Rehearing.

In view of the vigorous motion for a rehearing filed by appellee we call attention to the fact that appellee answered the suit admitting the execution of the note and mortgage on which the suit was brought, and in order to avoid payment, pleaded specifically that it had gone out of the retail business "and no longer was in need of such cash register so bought", and that "its situation was disclosed to the plaintiff and it was then and there agreed by and between the parties that if the defendant would surrender to the plaintiff said cash register that plaintiff would accept the same and cancel the obligation of the defendant to the plaintiff, retaining the sums theretofore paid".

All through this defensive pleading the allegations are made that "the plaintiff" made the agreement and consummated the settlement. At no place was there any pleading that the plaintiff acted through an agent that had actual or implied authority, or through an agent who was acting within the scope or apparent scope of his authority.

The plaintiff was entitled to a specific pleading and urged well taken exceptions to the broad and general allegations so made by the defendant, all of which were overruled by the trial court and exceptions reserved to such rulings.

It is true that the appellant has not urged these actions by the trial court as errors on this appeal, but viewing the record as we do, we do not believe that we should simply reverse and remand the cause for the purpose of permitting the defendant to replead. Under its broad and general allegations, the defendant was permitted to prove everything that was available to it.

We are not to be understood as holding that, under such a broad and general pleading, the defendant could not have established the fact that the agreement relied upon was made by some officer or agent who had the actual authority to do so, but we do hold that the burden was upon the defendant to establish such necessary facts

in order to defeat the plaintiff's right to recover.

 In 2 Texas Jurisprudence, par. 40, pp. 427–428, wherein the subject of corporation agents is discussed, it is said: "But it should be noted that if there is an actual absence of authority in the agent to do the thing charged, liability must necessarily be predicated on estoppel; if the elements of estoppel do not exist there is no liability."

This record is devoid of any evidence tending to show actual authority on the part of this local agent to make the contract relied upon by the defendant.

The only dealing that the defendant ever had with the plaintiff's local agency was to purchase through it the cash register in controversy.

The defendant learned from the contract of purchase that this local agency could not consummate the sale; that it could only take the order and transfer it to the home office of the seller, there to be accepted and filled.

After these steps were taken, the defendant was put upon notice and learned that the purchase price, to be paid in instalments, could not be paid to such local agency but that all payments had to be made to another agency not situated in Wichita Falls, but situated in Fort Worth.

The actual authority of the local agency was thus made known to the defendant and was shown to be limited.

These facts are obvious and cannot be successfully denied.

 The above cited text, at page 461, par. 64, states the general rule that mere authority to sell chattels gives an agent no power to exchange them for other property or to take anything other than money in payment therefor, or to deliver a new chattel to replace a defective one, even where the agent has authority to sell with a warranty.

 And at page 462, par. 67, this text states the rule to be that mere authority to collect debts does not imply authority to release debtors without payment.

 As we view the record before us the defendant is relegated to the defense of estoppel and before this can be invoked two important facts must be clearly established: First, the principal must have held the agent out in other instances or in the particular transaction as possessing authority sufficient to embrace the particular act in

question, or must have knowingly acquiesced in the agent's assertion of the requisite authority; and, second, the person dealing with the agent must have relied upon the conduct of the principal to his prejudice.

 Neither of these important facts was established by the defendant in the instant suit.

The defendant here has not changed his position to his injury. He delivered the cash register to the local office of the plaintiff, when its agent was not present, and he has been notified that the machine is being held for him.

Even though it be assumed that the defendant's pleadings were sufficient to enable him to stand upon the actual or implied authority of the local agent, or upon estoppel because of the agent's act being done within the apparent scope of his authority, the evidence does not establish either defense.

The motion for a rehearing is overruled.