**BLUEBONNET OIL & GAS COMPANY,**
**Appellant,**

v.

**PANUCO OIL LEASES, INC., Appellee.**

No. 13440.

Court of Civil Appeals of Texas.

San Antonio.

April 1, 1959.

Rehearing Denied April 22, 1959.

Thigpin & Steib, San Angelo, for appellant.

Perkins, Bezoni & Kirwan, Midland, for appellee.

BARROW, Justice.

This is an appeal from a judgment in favor of appellee, Panuco Oil Leases, Inc., against appellant, Bluebonnet Oil & Gas Company. Appellee sued appellant on a joint operating agreement for appellant's alleged pro-rata part of the cost of drilling, completing and equipping the Walker Estate No. 2 well in Sutton County, Texas. The case was tried to a jury and verdict returned on special issues. Judgment was rendered upon the verdict of the jury. Appellant filed its motion for new trial which was overruled by operation of law, and thereafter in due time prosecuted this appeal.

The decision of this case involves the construction of subdivision 5 of the joint operating contract entered into between the parties, as follows:

"5. Drilling and Development of Leases: Operator is authorized to drill at the expense of the Joint Account any well on the Joint Leases required to meet the offset and reasonable development obligations, and all express obligations under the Joint Leases, and any well necessary in order to prevent the expiration or termination of any Joint

Lease, without first securing the authority and approval of Non-Operators.

"Operator shall secure the written approval of Non-Operators before incurring against the Joint Account any item of expense, which item itself is in excess of $500.00, except in the drilling, equipping and completion of a well covered by the next preceding paragraph or in the drilling, equipping and completion of a well as to which notice has been given as provided in the next succeeding paragraph and with respect to which well no Non-Operator has given notice that it does not desire to participate in the cost and expense of drilling.

"Before Operator commences operations at the cost of the Joint Account for the drilling of any well on the Joint Leases other than wells required to meet the offset and reasonable development obligations, and the express obligations under said Joint Leases, or wells necessary in order to prevent the expiration or termination of any Joint Lease, it shall give ten (10) days' written notice of its intention to commence operations for the drilling of the well to each of the Non-Operators, and should any Non-Operator or Non-Operators notify Operator, within five (5) days of the mailing to it or them of the notice, that it or they do not desire to participate in the cost and expense of drilling, completing and equipping the well, the costs and expenses thereof shall be borne by the Operator and the Non-Operators, if any, not giving the notice, each bearing that portion of the cost which its interest in the Joint Leases bears to the total of the interests therein of Operator and Non-Operators participating in the drilling of the well; and if all Non-Operators give such notice, Operator may drill, complete and equip the well at Operator's cost and expense; provided, however, before any Non-Operator who elects not to participate in the cost and

expense of drilling, completing and equipping the well shall be entitled to any portion of the production therefrom Operator and the Non-Operators, if any, who participate in the cost of drilling, completing and equipping the well shall have the right to receive and shall receive currently out of the net proceeds of the sale of the portion of the production from the well belonging to each Non-Operator who does not participate in the cost and expense of drilling, completing, and equipping the well, double the amount of that portion of the cost which would have been borne by the non-participating Non-Operator, under the provisions hereof, had it participated in such cost and expense. The proceeds of the sale of the specified portion of the production shall be allocated between Operator and Non-Operators, if any, who participate in the drilling of the well in proportion to their interest in the Joint Leases. The cost of operating such well or of reworking same shall be borne by the Joint Account. If the well is a dry hole, the salvage therefrom shall be owned by the Operator and Non-Operators, if any, participating in the drilling thereof in proportion to their several interests in the Joint Leases."

The Walker Estate leasehold interest in Sutton County was owned jointly by appellant and appellee. Appellee owned an undivided three-fourths interest and appellant an undivided one-fourth interest. Under date of February 25, 1954, the parties executed an agreement in writing, which in the oil industry is known as a "Joint Operating Contract," by the terms of which appellee became the operating owner and appellant a non-operating owner.

There is no evidence in the record that the Walker Estate Well No. 2 was drilled to meet offset and reasonable development obligations, or any other express obligations under the joint lease, nor was it nec-.

essary to drill the well to prevent the termination of the lease.

It was not controverted that appellee did not give the ten days' written notice provided for in Paragraph 5 of the contract. However, it was stipulated between the parties that appellant had actual notice for more than ten days of appellee's intention to drill said well.

The judgment is based upon the findings of the jury in answer to the following special issues:

"Special Issue No. 1:

"Do you find from a preponderance of the evidence in this case that the defendant, Bluebonnet Oil & Gas Company, acting by and through its President, Sheardy Lamb, gave notice to Panuco Oil Leases, Inc., that it would not participate in the cost of drilling and completion of Walker Estate Number 2?

"Answer 'yes' or 'no'.

"Answer: 'No'.

"To aid you in answering the foregoing question, you are instructed that to constitute notice to Panuco Oil Leases, Inc., such notice, either verbal or written, must have been given to an officer of the Panuco Oil Leases, Inc., or to another as agent of Panuco Oil Leases, Inc., with authority to receive the same and with authority to act thereon.

"Special Issue No. 2:

"Do you find from a preponderance of the evidence in connection with the drilling of the Walker Estate Number 2 well that Bluebonnet Oil & Gas Company waived the ten day notice provision as contained in Article 5 of the Joint Operating Contract?

"Answer 'yes' or 'no'.

"Answer: 'Yes'.

"You are instructed the term 'waived' as used in this charge is meant

'To relinquish intentionally a known right or intentionally do an act inconsistent with claiming it. Waiver may not be intended in fact, but may arise from the acts of the party.' "

By its first point, appellant contends that the court erred in Special Issue No. 1, by placing the burden of proof on it rather than upon appellee, and argues that in order for appellee to recover, it was necessary for appellee to prove that it gave notice of intention to drill the Walker Estate No. 2 well and to prove also that appellant failed to give the notice of non-participation in the cost thereof.

We do not so interpret the contract. This was a new well, drilled for the joint profit of both parties. The first two paragraphs of subdivision 5 have no application to the facts in this case. It was not an ordinary item of expense as provided for in paragraph two. As we understand the third paragraph, whenever appellee gave ten days' notice of commencing a new well, or such notice was waived by appellant, then appellee had the right to drill the well at the joint expense of both parties, unless the appellant exercised its option of non-participation by giving the five-day notice thereof to appellee. Appellee's right to recover was not contingent upon proof by it that appellant did not exercise its non-participation option, but this was an affirmative defense to be established by appellant.

By its second point appellant complains of the court's instruction in connection with Special Issue No. 1. Appellant takes the position that the instruction places an unauthorized limitation as to the person to whom it is given must be an officer of the company or an agent of the company with actual authority to receive and act upon such notice, and overlooks and omits the proposition of apparent or ostensible authority.

The evidence in this respect on the part of appellant is that during the preparation on the ground Mr. Sheardy A. Lamb, presi-

dent of appellant company, told Travis R. Wilburn, who was superintendent of drilling and production on the lease for appellee, that appellant did not desire to and would not participate in the drilling of the well. This was denied by Wilburn. Mr. Lamb further testified that Wilburn said, "They (appellee) had plenty of money to spend and it didn't make any difference."

An examination of the statement of facts reveals that appellant failed to prove any apparent or ostensible authority on the part of Wilburn. Apparent or ostensible authority is grounded upon the conduct of the principal. What the principal did or neglected to do is the thing upon which a third party must rely for apparent or ostensible authority to exist. This question also involves awareness by the third party of the principal's conduct and reliance thereon. No former transaction demonstrated that Wilburn ever performed or purported to perform such functions on behalf of appellee. Nor is there any evidence of the conduct of the principal which would lead appellant to believe he had such authority. There was no evidence of the element of apparent or ostensible authority. National Cash Register Co. v. Wichita Frozen Food Lockers, Tex.Civ.App., 172 S.W. 2d 781, affirmed 142 Tex. 109, 176 S.W.2d 161; Tomkins Machinery & Implement Co. v. Peter, 84 Tex. 627, 19 S.W. 860; Springer v. Heath Motor Co., Tex.Civ.App., 261 S.W.2d 757; Union Producing Co. v. Allen, Tex.Civ.App., 297 S.W.2d 867, 870; Chapapas v. Delhi-Taylor Oil Corp., Tex. Civ.App., 323 S.W.2d 64; 2 C.J.S. Agency § 96c(3).

By its third and fourth points appellant complains of the submission of Special Issue No. 2, and contends that the court erred in submitting said issue because it is only an evidentiary issue, and is at most one of the elements of estoppel. Complaint is also made of the court's instruction in connection with the issue, in that the court failed to include therein an instruction that waiver will not be implied contrary to the inten-

tion of a party, except when required to prevent fraud or inequitable consequences to the adverse party.

The evidence is undisputed that about a week after the completion of Well No. 1 on the lease as a producer, the rig was skidded over some 960 feet to the new location for Well No. 2. That during the preparation for drilling the new well, Mr. Lamb, president of appellant corporation and in charge of its business, was present on the ground. That he filed the application for a permit to drill the well in the name of appellant, and received the permit in such name. That appellant made inquiry of the Board of Water Engineers with regard to the requirements as to surface casing in the well. That Mr. Lamb secured the services of the surveyor who made the location for the well, and that during the drilling of the well he procured cores and cuttings from the well and was quite active in the project until it developed that the well was a dry hole. There was also evidence that appellant had actual notice of the intention to drill Well No. 2, more than ten days prior to the commencement of actual drilling.

We think the issue of waiver and the court's instruction in connection therewith were adequate and proper under the facts in the case. Waiver is the intentional relinquishment of a known right, or it may consist of such conduct as warrants an inference of the relinquishment of a right. It is a voluntary act and implies an election to dispense with something of value or to forego some advantage which might have been demanded or insisted upon. 43 Tex. Jur. 891, Waiver, § 2. It is sometimes confused with estoppel. It is said that one reason for such confusion is the use of the words, in that a valid and complete waiver of a right may be said to effectually estop one party from claiming such right against another. Sovereign Camp W.O.W. v. Nigh, Tex.Civ.App., 223 S.W. 291. Waiver does not necessarily imply that one has been misled to his prejudice or into an altered position. Sovereign Camp W.O.W.

v. Putnam, Tex.Civ.App., 206 S.W. 970. It may be created by acts, conduct or declaration insufficient to create a technical estoppel. John Hancock Mut. Life Ins. Co. v. Harrison, Tex.Civ.App., 82 S.W.2d 1075, 1078; 67 C.J. 295; 92 C.J.S. Waiver p. 1050. It is unilateral in its character, resulting as a legal consequence from some act or conduct of the party against whom it operates, and no act of the party in whose favor it operates is necessary to complete it. Equitable Life Assur. Soc. v. Ellis, 105 Tex. 526, 538, 147 S.W. 1152, 152 S.W. 625; Dockery v. Hanan, Tex.Civ.App., 54 S.W. 2d 1017, 1022.

Finding no error, the judgment of the trial court is affirmed.